JANUARY 15, 1985

No. A–541.   SKILLERN v. PROCUNIER, DIRECTOR, TEXAS DEPARTMENT OF CORRECTIONS, ET AL.   Application for stay of execution of sentence of death scheduled for Wednesday, January 16, 1985, presented to JUSTICE WHITE, and by him referred to the Court, denied.   JUSTICE POWELL took no part in the consideration or decision of this application.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

I

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would grant the application for a stay of execution.

## II

Even if I believed otherwise, however, I would stay the applicant's execution pending this Court's resolution of *Heckler* v. *Chaney*, No. 83–1878, cert. granted, 467 U. S. 1251 (1984), which has been argued to this Court and currently awaits decision. I cannot participate in the cruel irony visited on this applicant by the Court today.

Doyle Edward Skillern is one of the eight plaintiffs in *Chaney*. Those plaintiffs allege that lethal drugs used to carry out death sentences in Texas and Oklahoma cause "agonizingly slow and painful deaths" and consequently are not "safe and effective" for their intended use in executions, as allegedly is required under the Federal Food, Drug, and Cosmetic Act, 21 U. S. C. § 301 *et seq.* The Court of Appeals for the District of Columbia Circuit agreed that the Food and Drug Administration has a statutory duty to investigate this claim, and indicated that it was prepared to "compel" the FDA to take action against the lethal drugs. *Chaney* v. *Heckler*, 231 U. S. App. D. C. 136, 153, 718 F. 2d 1174, 1191 (1983).

The merits of the Court of Appeals' action and order in *Chaney* are not before us on this application. In March 1984, the Solicitor General of the United States filed an application for stay of the Court of Appeals' mandate in *Chaney*, arguing that the decision was "likely to interfere with state enforcement of capital punishment statutes . . . ." Application in *Heckler* v. *Chaney*, No. 83–1878, p. 6. "[I]f the mandate is not stayed, the FDA will in all likelihood be required . . . to regulate the method of capital punishment used in several states," including Texas. *Id.*, at 10. THE CHIEF JUSTICE granted the motion for stay of the mandate based on this understanding of the effect of the judgment.

Thus the Government and this Court have proceeded in the *Chaney* case on the assumption that success by the plaintiffs will delay and perhaps ultimately preclude their execution by lethal injection. Yet today the Court decides to send one of those plaintiffs to his death by the very method challenged in *Chaney*. The Court obviously considers the issues in *Chaney* substantial enough to warrant plenary consideration. But despite our assertion of jurisdiction over applicant and his claim in *Chaney*, Texas subsequently has determined to execute applicant by lethal injection tomorrow morning. I am aware of no precedent that has permitted

irreparable injury to a party in a case receiving plenary consideration from this Court when the subject matter of the case is so intimately related to the threatened harm.  The same question would arise if *Chaney* raised a question of bankruptcy enforcement law and Texas were threatening to foreclose on applicant's home despite this Court's pending consideration of the legality of the method.  It is only mere chance that this applicant has seven coplaintiffs in his case; were he the only plaintiff, surely his execution would moot any decision we might render in *Chaney*.  The fortuity of multiple plaintiffs should not skew the Court's analysis.

The applicant argued in his 42 U. S. C. § 1983 action below that, by executing him and thereby mooting his opportunity to litigate his case regarding the very method of execution at issue, Texas will deprive the applicant of his right to have his claim considered by the federal courts.  The Courts of Appeals are unanimous in their discussion of the elements requiring consideration to obtain a stay under § 1983:

> "(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.  *Ruiz* v. *Estelle*, 666 F. 2d 854, 856 (5th Cir. 1982). . . . While 'the movant need not *always* show a "probability" of success on the merits,' he must 'present a substantial case on the merits when a serious legal question is involved and show that *the balance of the equities*, [i. e. the other three factors] *weighs heavily in the favor of granting the stay*.'"  *O'Bryan* v. *McKaskle*, 729 F. 2d 991, 993 (CA5 1984) (emphasis in original).

Accord, *Washington Metropolitan Area Transit Comm'n* v. *Holiday Tours, Inc.*, 182 U. S. App. D. C. 220, 223, 559 F. 2d 841, 843 (1977); *Providence Journal Co.* v. *FBI*, 595 F. 2d 889 (CA1 1979).

The balance of equities in this case runs entirely in the applicant's favor; indeed, respondents do not even attempt to argue that any of the last three factors favor the Texas Department of Corrections. Irreparability of the injury is obvious.  No possible harm can result to the Department if applicant's execution is stayed pending our decision in *Chaney*.  And certainly the public interest is not

served if a party to a case receiving plenary consideration before the highest Court in the land is compelled to undergo the very injury whose legality his case challenges. Any interest in finality or execution of the State's death penalty law will, at worst, simply be delayed but not denied if the decision in *Chaney* is adverse to the applicant. And if that decision were to go in the applicant's favor, then a stay will have prevented a harm the legality of which will be open to serious question under federal law.

Respondents' only argument against a stay is that applicant's likelihood of success on the merits is slim. That may be so in the Fifth Circuit, which rejected a claim similar to applicant's in *O'Bryan, supra* (although, interestingly, the *O'Bryan* court did not discuss the three equitable factors required by its own precedents). But the argument loses any force before this Court, which is currently giving plenary consideration to a split between the Court of Appeals for the Fifth Circuit and the Court of Appeals that decided *Chaney* on the very issue applicant presents. Even the Solicitor General has advised us that if applicant succeeds in *Chaney*, his execution will likely be "interfere[d]" with. Application in *Heckler* v. *Chaney*, No. 83–1878, p. 6. Our grant of the writ of certiorari in *Chaney* provides all the answer required to the question whether there is a "serious legal question involved" in applicant's claim, see *Autry* v. *Estelle*, 464 U. S. 1301, 1302 (1983) (WHITE, J., granting application for stay in chambers) ("[I]n view of our decision to give the case plenary consideration, I cannot say that the issue lacks substance"), unless the Court is prepared to hold that litigants that will be affected by our decisions may nevertheless take irreparable steps to oust us of our jurisdiction.

For these reasons, I dissent from the decision to deny this application for a stay of execution pending our decision in *Chaney*. The irony of the Court's contrary action will not be lost on the public, when we ultimately issue a decision to a plaintiff no longer able to receive it.