922 F.2d 842
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Peter STEWART and Winsome Andrea Johnson, Defendant/Appellant,
 Nos. 90-5358, 90-5426.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1991.
 
 Before KRUPANSKY, RALPH B. GUY, Jr. and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Peter Stewart appeals his conviction for various drug offenses and related charges arising from his arrest at the Radisson Hotel located at the Greater Cincinnati International Airport, both of which are located in Kentucky, on February 9, 1989. Defendant Winsome Johnson, who pled guilty to conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 846, appeals the district court's enhancement of her sentence for obstruction of justice, under the United States Sentencing Guidelines, U.S.S.G. Sec. 3C1.1, and the court's refusal to reduce her sentence for acceptance of responsibility, under U.S.S.G. Sec. 3E1.1. For the reasons stated below, we affirm the conviction of defendant Stewart and the sentence imposed on defendant Johnson.
 
 I.
 
 2
 Pursuant to information received by an airport taxi dispatcher, Drug Enforcement Agency ("DEA") Task Force Officers Jim McKiernan and Mike Bogenschutz followed defendant Winsome Johnson to the Radisson Hotel located at the airport, where she checked into room 129. After checking the passenger information on flight 450 from Delta Airlines, Officer McKiernan identified Johnson as fitting a drug courier profile. While Officer McKiernan was speaking with the desk clerk at the Radisson Hotel, Johnson called the front desk and requested assistance in making an outside call. The clerk went to Johnson's room and assisted her in making a call to Cincinnati, Ohio. While in the room, the clerk tried to sell Johnson a watch which he had for sale. Johnson told him that she did not have any money at that time but would have some later in the morning as she was expecting a visitor. The clerk then observed a small quantity of marijuana on the table, which Johnson gave him in a piece of paper.
 
 
 3
 After returning to the hotel registration desk, the clerk related the events which transpired in room 129 to the Officers and turned over the marijuana which Johnson had given to him. An immediate check with the local telephone company indicated that the phone number which Johnson had called from her room was registered to 4049 Reading Road in Cincinnati, Ohio. Several calls from persons with Caribbean accents then came through for room 129.
 
 
 4
 Believing that a drug transaction was about to take place, Officer McKiernan called for assistance to set up surveillance of the room, the parking lot, and the entrances and exists to the hotel. In addition to Officer McKiernan, DEA Officers Bunning, Luke, Curry and Bogenschutz participated in the surveillance of the hotel. Some time later that morning, surveillance officers observed a 1981 Volvo with Ohio license plates enter the Radisson parking lot. Defendants Stewart and Dillon, who appeared to be of Caribbean descent, got out of the car and separately entered the front door of the hotel. After a short time, Stewart and Dillon arrived at the first floor of the hotel where Officer Bunning, watching from the peephole in the door to room 124, observed Stewart and Dillon walk past 124 toward room 129. Officer Bunning heard several knocks and a male Jamaican voice call "Lisa" four times. When the knocking stopped, Dillon and Steward proceeded away from the area of room 129 and they were approached for questioning. Dillon consented to speak with Officer McKiernan and stated that he was not a guest at the hotel and that a friend had dropped him off. Dillon further stated that he and Stewart were there to see Stewart's sister, and denied knocking on the door to room 129.
 
 
 5
 As Officer McKiernan began to question Stewart, the door to 129 opened and Winsome Johnson stepped out. Officer McKiernan asked Stewart if he knew Johnson. Stewart replied that he did not know Johnson and that he was there to visit his sister. Officer McKiernan then approached Johnson, identified himself as a police officer, and asked if she knew Dillon or Stewart. Johnson replied that she did not know either of them. Johnson then consented to talk to Officers Luke and McKiernan in her room. When McKiernan asked Johnson if she had heard the knock on the door, Johnson first stated that she was asleep and then stated that she was in the bathroom. While still in the room, and with her consent, Johnson's bag was searched and 250 grams of cocaine was found inside. She was promptly arrested.
 
 
 6
 During the time Officers McKiernan and Luke were in room 129 questioning Johnson, Officers Curry and Bogenschutz continued to question Stewart and Dillon. Stewart denied knocking on the door to room 129 and once again stated that he was there to see his sister, Patricia, who had allegedly arrived from Cleveland the night before. He then stated that he had first gone to room 229 and knocked and when he did not get a response he came down to room 129. Stewart gave his address as 5206 Bond Hill street in Cincinnati, an address Bogenschutz thought to be false since he had never heard of a Bond Hill street. Stewart then gave the officers his Colorado drivers license which contained a six hundred series number designated by the letters "SSN." Based upon his dealings with the Department of Health and Human Services, Officer McKiernan knew that no six hundred series numbers had been issued at that time. When asked how he had arrived at the hotel, Stewart stated that "Tony" had dropped him off in a Ford Escort. When confronted with the agent's knowledge of his arrival in the Volvo with Dillon, Stewart admitted that he drove the car to the airport. When asked who the car belonged to, Stewart stated that he had sold it to his sister but that, after she had missed some payments, he took it back. At this point, Stewart was read his rights and was asked to consent to a search of his car. Stewart became visibly nervous and stated that he would prefer that the agents obtain a warrant. Stewart and Dillon were then arrested and taken to the airport police station.
 
 
 7
 Shortly after Stewart and Dillon were arrested, the white Volvo's vehicle identification number (VIN) was checked. The VIN showed that the Volvo belonged to Pauline Griffin at 4049 Reading Road, Cincinnati, Ohio, the same address that Johnson had called from her hotel room that morning. Later that day, the Volvo was searched pursuant to a lawful warrant although nothing significant was found. About nine days later, after the Volvo was towed from the airport to the DEA garage in Cincinnati, Ohio, an inventory search was conducted by Officer Bogenschutz and $5,300 was found underneath the dash board which he had partially dismantled.
 
 
 8
 On March 8, 1989, defendants Johnson, Stewart and Dillon were named in a five count indictment charging: (1) Johnson, Stewart and Dillon with conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. Sec. 846; (2) Johnson with possession of cocaine with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1); (3) Stewart and Dillon with attempt to possess cocaine, in violation of 21 U.S.C. Sec. 846; (4) Johnson with interstate travel to facilitate narcotics activity, in violation of 18 U.S.C. Sec. 1952(a)(3); and (5) Stewart with use of a false social security number with the intent to deceive, in violation of 42 U.S.C. Sec. 408(g)(2). Thereafter, defendant Stewart filed a motion to suppress all evidence seized as a result of his arrest, including the $5,300 taken from the Volvo, as well as statements made by him at the time of his arrest. On August 24, 1989, after considering defendants' objections to the magistrate's report and recommendation, the district court denied Stewart's motions to suppress.
 
 
 9
 Prior to trial, Johnson entered a plea of guilty to Count One of the indictment and the remaining counts against her were dismissed. On September 12, 1989, a jury found Stewart guilty on all counts in which he was named. The indictment against Dillon was dismissed after the jury was unable to reach a verdict concerning any of the charges against him.
 
 
 10
 On November 22, 1989, Stewart was sentenced to 63 months imprisonment. On March 19, 1990, the district court adopted the magistrate's recommendation that Johnson's sentence be enhanced two levels for obstruction of justice, under U.S.S.G. Sec. 3E1.1, and she was sentenced to 41 months imprisonment.
 
 
 11
 A. Reasonable Suspicion/Probable Cause to Stop/Arrest Stewart
 
 
 12
 Stewart appeals the district court's denial of his motion to suppress all statements and evidence obtained by the DEA agents pursuant to his detainment and subsequent arrest in the Radisson hotel on February 9, 1989, claiming that the police had neither reasonable suspicion for the stop nor probable cause for the arrest. A finding that reasonable suspicion to stop or probable cause to arrest existed will not be set aside unless, under the totality of the circumstances, the district court's findings of fact were "clearly erroneous." See United States v. Garcia, 866 F.2d 147, 151 (6th Cir.1989); see also United States v. Sokolow, 490 U.S. 1, ----, 109 S.Ct. 1581, 1585 (1989) (totality of the circumstances must be considered when determining reasonable suspicion or probable cause).
 
 
 13
 Under the facts of this case, it is clear that the DEA officers had a "reasonable suspicion" that Stewart was engaged in criminal activity. Prior to the stop, the DEA officers knew the following:
 
 
 14
 1. Winsome Johnson had just flown in from Los Angeles, a source city, on flight 450, and had paid for her ticket in cash;
 
 
 15
 2. Johnson had taken a room at the nearby Radisson hotel and had paid for a one day stay in cash;
 
 
 16
 3. Johnson called a telephone number in Cincinnati, Ohio and was expecting a visitor who was going to purchase something from her;
 
 
 17
 4. Johnson gave the desk clerk some marijuana;
 
 
 18
 5. Several calls were made to Johnson's room by persons with Caribbean accents;
 
 
 19
 6. The telephone number which Johnson had called from her room was registered to 4049 Reading Road in Cincinnati, Ohio;
 
 
 20
 7. Stewart and Dillon, who appeared to be of Caribbean nationality, arrived at the Radisson shortly thereafter in a white Volvo with an Ohio license plate; and
 
 
 21
 8. After entering the hotel, Stewart and Dillon knocked on a door which the DEA agents reasonably assumed to be room 129 occupied by Johnson.
 
 
 22
 These facts established a reasonable and articulable suspicion that Stewart was involved in criminal activity. See also Terry v. Ohio, 392 U.S. 1 (1968); United States v. Hardnett, 804 F.2d 353, 356 (6th Cir.1986), cert. denied, 479 U.S. 1097 (1987).
 
 
 23
 After the police officers stopped Stewart and Dillon in the hallway and prior to their arrest, the police knew the following:
 
 
 24
 1. Stewart stated that he and Dillon had been dropped off at the hotel when, in fact, they had driven themselves in a white Volvo;
 
 
 25
 2. Stewart and Dillon both initially denied knocking on the door to room 129 before Stewart confirmed that he had knocked on that door;
 
 
 26
 3. Stewart gave an address which Officer Bogenschutz reasonably believed was false;
 
 
 27
 4. Cocaine was found in Johnson's room;
 
 
 28
 5. Stewart presented a driver's license with a number on it which the officers reasonably believed to be a false social security number; and
 
 
 29
 6. Stewart became visibly upset when asked if he would consent to a search of the Volvo.
 
 
 30
 These facts established a "fair probability" that Stewart was committing or about to commit a crime, thus supporting a finding of probable cause for the arrest. See Sokolow, 490 U.S. at ---, 109 S.Ct. at 1585.
 
 B. Inventory Search of the White Volvo
 
 31
 Stewart also appeals the district court's denial of his motion to suppress the $5,300 found in the dashboard of the Volvo on the grounds that the inventory search went beyond the scope of normal DEA procedures and was conducted without supervision or photographic documentation. Again, we review the district court's findings under the "clearly erroneous" standard. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980).
 
 
 32
 An inventory search is lawful if two criteria are met: (1) the search must have been conducted pursuant to established inventory procedures; and (2) the inventory search must not have been utilized as a pretext for an investigatory search. Colorado v. Bertine, 479 U.S. 367, 375 (1987); South Dakota v. Opperman, 428 U.S. 364 (1976); United States v. Ford, 872 F.2d 1231 (6th Cir.1989), cert. denied, 110 S.Ct. 1946 (1990). In holding that an inventory search of a closed container was permissible, the Supreme Court noted:
 
 
 33
 When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.
 
 
 34
 Bertine, 479 U.S. at 375 (quoting United States v. Ross, 456 U.S. 798, 821 (1982)). The dismantling of a dashboard during an inventory search is, therefore, not per se unlawful, as long as it is conducted pursuant to established procedures and without unlawful motive. See also United States v. Duncan, 763 F.2d 220 (6th Cir.1985) (search of locked trunk in a vehicle is permissible); United States v. Edwards, 577 F.2d 883 (5th Cir.) (en banc), cert. denied, 439 U.S. 968 (1978) (search under carpeting in passenger compartment of a vehicle is permissible).
 
 
 35
 At the suppression hearing, Officer Bogenschutz testified that he was acting according to standard DEA procedures when he conducted the inventory search of the white Volvo.[1] Those procedures are defined in Sections I(2)(a) and (c) of the DEA procedure memorandum which provide:
 
 
 36
 (a) It will be the responsibility of any officer ... who has motor vehicle brought or towed to and impounded at Sheriff's Patrol Headquarters, to inventory or have inventoried said vehicle....
 
 
 37
 .............................................................
 
 
 38
 ...................
 
 
 39
 * * *
 
 
 40
 (c) The contents of motor vehicles that can be secured in and out of view [sic] area in the vehicle; such as the trunk compartment, will be listed on the Motor Vehicle Contents Inventory Form (Form MV-1).
 
 
 41
 (emphasis added). Stewart has offered no proof to refute Officer Bogenschutz's testimony or to otherwise suggest that standard procedures were not followed in this instance. Further, Stewart has offered no evidence that supervision or photographic documentation are required under DEA procedures. Finally, there has been no showing that the police impounded the Volvo as a pretext for the unlawful motive of investigating suspected criminal activity. Therefore, we find that the district court's admission of the $5,300 into evidence was not in error.
 
 
 42
 C. Stewart's Motion for a Judgment of Acquittal on Count V of the Indictment
 
 
 43
 Defendant Stewart's final argument is that the district court improperly denied his motion for a judgment of acquittal as to Count V of the indictment which charged him with intentionally misrepresenting his social security number (designated on the license as "SSN"), in violation of 42 U.S.C. Sec. 408(g)(2), which states:
 
 
 44
 Whoever--
 
 
 45
 .............................................................
 
 
 46
 ...................
 
 
 47
 * * *
 
 
 48
 (g) for the purpose of causing an increase in any payment authorized under this subchapter ... or for any other purpose--
 
 
 49
 .............................................................
 
 
 50
 ...................
 
 
 51
 * * *
 
 
 52
 (2) with intent to deceive, falsely represents a number to be the social security number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person;
 
 
 53
 .............................................................
 
 
 54
 ...................
 
 
 55
 * * *
 
 
 56
 shall be guilty of a felony and upon conviction thereof shall be fined not more than $5,000 or imprisoned for not more than five years, or both.
 
 
 57
 42 U.S.C. Sec. 408(g)(2) (emphasis added); see United States v. Darrell, 828 F.2d 644 (10th Cir.1987).
 
 
 58
 The standard of review regarding a district court's denial of a motion for judgment of acquittal may be found in United States v. Holloway, 731 F.2d 378 (6th Cir.), cert. denied, 469 U.S. 1021 (1984), wherein this court stated:
 
 
 59
 In deciding whether evidence is sufficient to withstand a motion for an acquittal, we must view the evidence and all reasonable inferences in the light most favorable to the government. United States v. S. & Vee Cartage Co., 704 F.2d 914, 921 (6th Cir.1983). If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the denial of defendant's motion for acquittal must be affirmed.
 
 
 60
 Id. at 381. In support of his motion, defendant claims that he never told the officers that the number on the card was his social security number and that he was unaware that the letters "SSN" stood for a social security designation. In short, he argues that his "intent to deceive" was never proven.
 
 
 61
 It is undisputed that prior to his arrest, Stewart gave the police officers his Colorado driver's license with an eight digit number on it designated by the letters "SSN." It is also undisputed that Stewart knew what a social security number was as well as its purpose at the time he applied for his Colorado license and that he gave the number to Colorado officials when he applied for his license. Viewing the evidence in the light most favorable to the government, a reasonable mind might find that Stewart knew the letters "SSN" on his Colorado driver's license stood for the words "social security number" and that he intentionally gave Colorado officials a false number at the time he applied for his license. With respect to intent to deceive, a jury could reasonably infer that Stewart gave the officers a false social security number to prevent them from confirming his identity or checking his criminal history. Accordingly, the trial court's denial of Stewart's motion for a judgment of acquittal on Count V of the indictment is affirmed.
 
 D. Enhancement of Johnson's Offense Level
 
 62
 Defendant Johnson contends that the district judge erred in enhancing her sentence two levels for obstruction of justice, under U.S.S.G. Sec. 3C1.1, and in failing to award her a two level reduction for acceptance of responsibility, under U.S.S.G. Sec. 3E1.1. We review these assignments of error under the "clearly erroneous" standard. United States v. Ransbottom, 914 F.2d 743, 747 (6th Cir.), cert. denied, 1990 U.S.Lexis 5795 (1990).
 
 
 63
 Sentencing Guideline Sec. 3C1.1 provides that "if the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense," the defendant's sentence may be increased by two levels. See United States v. Wilson, 904 F.2d 234 (5th Cir.1990). False testimony concerning a material fact may warrant an upward two level adjustment, although the testimony in question should be evaluated in a light most favorable to the defendant. U.S.S.G. Sec. 3C1.1, comments 1(c) and 2.
 
 
 64
 The magistrate found that there were "glaring inconsistencies" in Johnson's trial testimony. Johnson contends that such discrepancies should be excused because she was unaware that she was to be a witness at trial and was not prepared by her attorney to give such testimony. We find Johnson's argument unpersuasive. The record is clear both from the trial testimony and the testimony elicited during the post-trial hearing before the magistrate that defendant gave false testimony concerning her knowledge of the identity of Stewart, a matter so basic that no amount of preparation or counseling would have affected her memory. At Stewart's and Dillon's trial, Johnson denied knowledge of a note found on her person at the time of her arrest. This note had written on it Stewart's alleged alias identity and a phone number listed to 4049 Reading Road, the same address as was listed as the Volvo's owner's address. Proof was also submitted at the sentencing hearing that Johnson passed notes to Stewart while they were in jail together. Accordingly, the district court's finding that Johnson gave false testimony at trial concerning material facts in order to defeat the government's case against Stewart and Dillon was not "clearly erroneous."
 
 
 65
 Finally, Johnson contends that she was entitled to a two level reduction for acceptance of responsibility, under Sentencing Guideline 3E1.1. Cooperation with federal authorities is an important factor in considering a reduction for acceptance of responsibility. See U.S.S.G. Sec. 3E1.1, comments 1(a)-(g) and 3; United States v. Rodriguez, 896 F.2d 1031 (6th Cir.1990). In light of our ruling upholding the district court's finding that Johnson obstructed justice under U.S.S.G. Sec. 3C1.1, we find that the district court did not error in refusing to award Johnson a two level reduction for acceptance of responsibility.
 
 
 66
 AFFIRMED.
 
 
 
 [1]
 In addition to the government's contention that this was a lawful inventory search, it is also argued that the $8,000 was seized pursuant to a valid warrantless search of property subject to forfeiture, under the reasoning of United States v. Harris, 727 F.2d 401 (5th Cir.), cert. denied, 469 U.S. 840 (1984), reh'g denied, 469 U.S. 1182 (1985) in which the court held: "[A] seizure of a vehicle [for forfeiture] upon probable cause ... it was being used to transport contraband, carries with it the right to conduct a warrantless search of the vehicle if properly so seized...." Id. at 405. Because the government has failed to put forth any evidence that the Volvo was, in fact, seized for forfeiture "upon probable cause it was being used to transport contraband," we decline to consider or apply the forfeiture exception enunciated in Harris, in this instance