RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0098P (6th Cir.)
File Name: 02a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

EMAD AL-ZUBAIDY,
  *Defendant-Appellant.*

No. 00-2343

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-80661—Nancy G. Edmunds, District Judge.

Argued: January 23, 2002

Decided and Filed: March 21, 2002

Before: JONES and COLE, Circuit Judges; GWIN, District
Judge.[*]

———————————

## COUNSEL

**ARGUED:** Douglas R. Mullkoff, Ann Arbor, Michigan, for
Appellant. David J. Debold, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————————

[*]The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

**ON BRIEF:** Douglas R. Mullkoff, Ann Arbor, Michigan, for Appellant.    David J. Debold, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————

## OPINION

———————

R. GUY COLE, JR., Circuit Judge.  This action stems from an interstate stalking charge under 18 U.S.C. § 2261A brought against Defendant-Appellant Emad Al-Zubaidy.  Al-Zubaidy argues that his bench trial conviction was not supported by sufficient evidence that he had formed the requisite intent under the statute, and that 18 U.S.C. § 2261A is an unconstitutional exercise of Congress's Commerce Clause power.  Al-Zubaidy now appeals from the conviction and sentence imposed by the district court.

This appeal presents two issues for our review: (1) Whether the district court properly denied Defendant's Fed. R. Crim. P. 29(c) Motion for Judgment of Acquittal because there was sufficient evidence that Defendant crossed state lines with the intent to injure or harass his ex-wife; and (2) Whether 18 U.S.C. § 2261A exceeds Congress's authority under the Commerce Clause of the U.S. Constitution.  We conclude that the district court properly denied Defendant's Motion for Judgment of Acquittal and **AFFIRM** the judgment of the district court. We also conclude that 18 U.S.C. § 2261A does not exceed Congress's authority under the Commerce Clause of the U.S. Constitution.

### I. BACKGROUND

### A.  Factual Background

Defendant Al-Zubaidy and his wife Aathra Al-Shimary were married in Saudi Arabia in 1992.  In 1994, Al-Zubaidy and Al-Shimary moved to Rockford, Illinois with their two children.  Their marriage was pervaded with abuse, and the record indicates multiple instances of physical and emotional

we now join the Eighth Circuit in extending it to include 18 U.S.C. § 2261A. *Vollmer*, 2001 WL 21234, at *1.

### III. CONCLUSION

Accordingly, we **AFFIRM** the district court's denial of defendant's Rule 29(c) Motion for Judgment of Acquittal, and conclude that 18 U.S.C. § 2261A does not exceed Congress's authority under the Commerce Clause of the U.S. Constitution.

mistreatment of Al-Shimary. Al-Zubaidy also appears to have had trouble holding a job, drank heavily, and often would not come home until late at night.

The couple later spent time in Kansas City, Missouri, and Lincoln, Nebraska. In both locations, Al-Zubaidy continued his pattern of emotional and physical abuse against Al-Shimary. This pattern included severe blows, one of which caused Al-Shimary to fall down a flight of steps while pregnant with the couple's third child. A later assault nearly sent Al-Shimary into premature labor. While still in Nebraska, Al-Zubaidy spent time in jail for sexually assaulting another woman. After discovering that her husband was having sexual relations with another woman, Al-Shimary obtained a Nebraska divorce in 1997. Al-Shimary then moved back to Rockford, Illinois with her three children – in part because she feared possible repercussions from her ex-husband because of the divorce.

Al-Zubaidy followed Al-Shimary back to Rockford and maintained a separate residence. Soon thereafter, Al-Zubaidy began threatening Al-Shimary with physical harm if she did not reconcile their marriage. In particular, he would show up at her apartment and harass her, and threatened to burn down Al-Shimary's apartment. After several months of abuse, Al-Shimary decided to move to Detroit, Michigan to be near to her parents and younger brother and to escape from Al-Zubaidy.

Al-Shimary moved to Detroit in late October, 1997. The parties stipulate that Al-Zubaidy moved to Detroit on October 28 or 29, 1997, which the district court found to be a few days to a week after Al-Shimary's move. However, only three days after Al-Shimary's move, Al-Zubaidy began making threatening calls to Al-Shimary's father in Detroit. These threatening calls occurred on a daily basis, late at night, and involved death threats to the father concerning him, his wife, and Al-Shimary and her children. Al-Shimary's father testified that "many" calls occurred on any given day, and that these calls continued "day after day" for a period of months

after they began. Al-Zubaidy also threatened to burn the father's house down, and allegedly set his car on fire and broke the window of his home. The threats were not limited to telephone calls – Al-Shimary's father noted that he also was threatened in person by Al-Zubaidy. Once Al-Zubaidy stopped the father on the street, and made a motion to indicate he would slash the father's throat.

Although Al-Shimary did not live with her parents and brother in Detroit for the bulk of this harassment,[1] she was aware of this harassment to her family, and would often have them spend the night with her and her children out of fear of Al-Zubaidy. The record does not state when Al-Zubaidy first learned Al-Shimary's new address in Detroit, but his direct harassment of her began in December, 1997 -- just two months after his arrival in Detroit. On one occasion, Al-Zubaidy allegedly assaulted Al-Shimary with a baseball bat outside of her apartment. Another time, Al-Zubaidy arrived at Al-Shimary's apartment with the stated intention to see his children, but quickly hit her in the head with a heavy toy truck. Al-Zubaidy and an accomplice also tried to force Al-Shimary into their car on a third occasion. In March, 1998, Al-Shimary's apartment was set on fire by an unknown arsonist, and Al-Zubaidy warned Al-Shimary's father that his house was "also going to burn down." These events were not isolated: Al-Shimary testified that Al-Zubaidy would come to her apartment every night, standing outside and screaming at her. Even after Al-Shimary had moved to a new apartment to escape Al-Zubaidy's constant harassment, she noticed him waiting outside her apartment late at night.

The district court made a number of factual findings at the conclusion of the bench trial:

> First, . . . Al-Zubaidy, has a history of threatening and carrying out violent behavior against his wife and ex-

---

[1]The record indicates that upon her move to Detroit, Al-Shimary initially moved in with her family. She soon found her own apartment, where she lived with her three children.

constitutional challenge to 18 U.S.C. § 2261A. *See Vollmer*, 2001 WL 21234, at *1 (finding that § 2261A's requirement of travel across state lines clearly falls within Congress's authority to regulate the channels of commerce).

Section 2261A is based upon Congress's category one Commerce Clause authority, its power to regulate the use of the channels of interstate commerce to prevent the "spread of any evil or harm to the people of other states from the state of origin." *Brooks*, 267 U.S. at 436. *See also Lopez*, 514 U.S. at 557; 18 U.S.C. § 2261A. The language of the statute provides an explicit jurisdictional element requiring interstate travel, an element that reinforces its category one justification and which the Supreme Court in *Morrison* advised "would lend support to the argument that [the statute at issue] is sufficiently tied to interstate commerce." 529 U.S. at 613. Within this category one regulation, § 2261A falls well within Congress's plenary authority to regulate things and activities that cross state lines. *See Page*, 167 F.3d at 334 (citing *Robertson*, 514 U.S. at 670).

In endorsing the constitutionality of § 2261A, the interstate stalking statute, we are careful to distinguish it from the statute at issue in *Morrison* – § 13981. Section 13981 punished intrastate activity, included no jurisdictional element, and relied on the prohibited conduct's aggregate effect on interstate commerce. *Morrison*, 529 U.S. at 617. That § 13981 provides for civil remedies and § 2261A provides for criminal remedies is not nearly as important as the Commerce Clause justification for those remedies. *United States v. Bailey*, 112 F.3d 758, 766 (4th Cir. 1997). Section 2261A is spared the "substantial effects" test for Commerce Clause regulation because it regulates a *channel* of commerce – prohibiting persons from crossing state lines to engage in unlawful conduct. *Faasse*, 265 F.3d at 490. *Lopez* and *Morrison* both endorse Congress's power to regulate under this category. *Lopez*, 514 U.S. at 559; *Morrison*, 529 U.S. at 609. Our own precedent following *Morrison* is in agreement, *see Faasse*, 265 F.3d at 490, and

exceeds Congress's authority under the Commerce Clause). The bulk of the criminal remedy provisions of the Violence Against Women Act, however, do not rely on the "substantial effects" justification for Commerce Clause regulation. Instead, they rely on the first and second categories of the Commerce Clause test set out in *Lopez,* which include the regulation of channels or instrumentalities – of persons or things – in interstate commerce. *United States v. Faasse*, 265 F.3d 475, 482, 490 (6th Cir. 2001) (en banc) (considering the Child Support Recovery Act of 1992, 18 U.S.C. § 228 (1994), and finding that it survives Commerce Clause review under all three *Lopez* categories).

*Lopez* explicitly endorses Congress's extensive power under the first category to regulate the use of the channels of interstate commerce. 514 U.S. at 559; *Faasse*, 365 F.3d at 490. A statute that punishes persons for using the channels of interstate commerce to bring "the spread of any evil or harm to the people of other states from the state of origin" is directly within Congress's Commerce Clause power. *Brooks v. United States*, 267 U.S. 432, 436 (1925). *See also N. Am. Co. v. SEC*, 327 U.S. 686 (1946) ("Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature.").

This Circuit has not yet considered whether 18 U.S.C. § 2261A is within Congress's authority under the Commerce Clause. However, we have considered the constitutionality of other criminal remedy provisions of the Violence Against Women Act. *Page*, 167 F.3d at 333 (upholding the constitutionality of 18 U.S.C. §§ 2261 and 2262). We found that those statutes that rely on categories one and two of the *Lopez* test to justify congressional authority under the Commerce Clause are well within Congress's plenary power to regulate commerce. *See id.*; *Faasse*, 265 F.3d at 482. *Morrison*, 529 U.S. at 612, does not change this equation. *Faasse,* 265 F.3d at 483. Accordingly, we join the Eighth Circuit in rejecting Al-Zubaidy's Commerce Clause

wife. This history is relevant both to defendant's intent and to whether the victim, Aathra Al-Shimary, had a reasonable fear of serious bodily injury to herself . . . or a member of her family.

. . . .

In terms of time sequence, I believe it's quite clear that Aathra [Al-Shimary] moved first to Detroit and that the defendant, Emad Al-Zubaidy, followed her there.

After crossing state lines, after traveling from Rockford to Detroit, . . . there were calls to [Al-Shimary's] parents' house in which the defendant expressed anger that [Al-Shimary] had moved, anger at her father for moving her, and in which he rejected any idea of reconciliation. He called her a whore, he called her mother a whore, he called her father a bastard, and there were a variety of other ugly names and threats made to her father directly, and indirectly to Aathra [Al-Shimary] and her mother.

Her father testified that there were many calls in any given day, that the calls continued day after day once they began.

. . . .

These . . . incidents are particularly relevant because I believe they go to the defendant's intent, [that he] traveled from Rockford to Detroit with the intent to reconcile with his wife, that he wanted to get back with her and resurrect the marriage. There is simply no evidence at all that supports that.

. . . .

In addition to these incidents of which Aathra [Al-Shimary] was aware, according to her own testimony and the testimony of her father, there were obviously many incidents involving her as well, and they appear to have escalated through the fall of 1997 and into the winter of 1998.

. . . .

My conclusion concerning intent is that the entire course of conduct of the defendant reflects his anger and his assaultive, abusive behavior. I conclude that his intent

was to inflict as much physical and psychological damage on Aathra [Al-Shimary] as he could get away with, as is clearly reflected by the escalation of harassment after he came to Detroit.

The fact that there was a slight gap between the time that he moved from . . . Rockford to Detroit and when the worst of the harassment occurred is not significant to me. It is the harassment, the threats, the name calling, the phone calls [that] began three days after her move from Rockford, and he showed up within a week of her move here and . . . there's nothing in the record that supports he had any intent other than to injure, harass, and abuse her as much as he could get away with, which goes to effect. Did she have a reasonable fear or apprehension of death or serious bodily injury to herself or her family, I don't think there can be any question about that.

   . . . .

So I don't think that there's really any question but that this, that as a result of this defendant's travel from . . . Rockford to Detroit that [Al-Shimary] was placed in reasonable fear of death or serious injury to herself or others. She was afraid for her parents, she testified to that. She was afraid for herself. This fear was reasonable based on his assaultive and abusive history, and he expressly included death in his threats not only to her but to her father and mother, as well.

J.A. at 221-232.

### B. Procedural History

Al-Zubaidy was charged with one count of interstate stalking, in violation of 18 U.S.C. § 2261A. He waived a jury trial, and was found guilty by the district court on February 25, 2000. He was sentenced to a prison term of forty-six months on October 24, 2000. Defendant timely appealed this judgment on October 24, 2000.

### B. Section § 2261A and Congress's authority under the Commerce Clause of the U.S. Constitution

#### 1. Standard of Review

We review questions of law and statutory interpretation *de novo*. *Nixon v. Kent Co.*, 76 F.3d 1381, 1386 (6th Cir. 1996) (en banc); *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993).

#### 2. Analysis

Plaintiff argues that 18 U.S.C. § 2261A exceeds Congress's authority under the Commerce Clause of Article I, Section 8, Clause 3 of the U.S. Constitution. Congress has the authority to enact three categories of Commerce Clause legislation: (a) it may regulate the channels of interstate commerce; (b) it may regulate and protect the instrumentalities of interstate commerce, including persons or things in interstate commerce; and (c) it may regulate intrastate activity if it has a substantial effect on commerce. *United States v. Page*, 167 F.3d 325, 334 (6th Cir. 1999) (en banc) (analyzing § 2261(a)(2), the interstate domestic violence statute, which was enacted along with § 2261A as part of the Violence Against Women Act in 1994) (citing *United States v. Lopez*, 514 U.S. 549, 558-59 (1995)). While the Supreme Court in *Lopez* did require a purely intrastate activity to have a "substantial effect" on commerce, 514 U.S. at 558, it "did not . . . extend the 'substantial effects' test to all Commerce Clause legislation." *Page*, 167 F.3d at 334-35. Where Congress seeks to regulate the channels or instrumentalities of interstate commerce, it is not bound by the "substantial effects" test and retains plenary power to regulate things and activity that cross state lines. *Id.* (citing *United States v. Robertson*, 514 U.S. 669, 670 (1995)).

Certain civil remedy provisions of the 1994 Violence Against Women Act do exceed Congress's authority under the Commerce Clause because they attempt to regulate intrastate activity that is not economic and does not have a substantial relation to commerce. *United States v. Morrison*, 529 U.S. 598, 613 (2000) (holding that 42 U.S.C. § 13981

Finally, it is true that the timeline of Al-Zubaidy's actions was staggered, and that his most severe assaults and threats directly on Al-Shimary did not begin until nearly two months after his first arrival in Detroit on October 29, 1997. However, Al-Zubaidy's phone calls to the home of Al-Shimary's father – involving threats of death and damage to property – began only a few days after the move. The statute covers threats that cause reasonable fear of the death or serious bodily injury not only to Al-Shimary herself, but also to a member of her immediate family. 18 U.S.C. § 2261A. Even if the reasonable fear of death or serious bodily injury to Al-Shimary does not qualify in this case because of the two month delay, her reasonable fear for her family does. *Id.*

The district judge's findings that Al-Zubaidy's intent was to "injure, harass, and abuse her [Al-Shimary] as much as he could get away with" also support § 2261A's requirement of reasonable fear to oneself. This finding is well-supported in the record, and survives our clear error review of a district court's findings of fact. *Nationwide*, 278 F.3d at 625. It also is the logical outcome of the totality of the circumstances test to ascertain intent, and is readily supported by the evidence viewed in a light most favorable to the government. *Montgomery*, 980 F.2d at 393; *DeAndino*, 958 F.2d at 148. A rational trier of fact would have no difficulty finding the defendant guilty beyond a reasonable doubt under this evidence. *Id.* The district court correctly found this evidence sufficient for the conviction and denial of the Rule 29(c) motion for acquittal. This denial survives our *de novo* review. *Canan*, 48 F.3d at 962.

## II. DISCUSSION

### A. Sufficiency of the evidence that Defendant had formed the intent to injure or harass his ex-wife when he traveled across state lines

#### 1. Standard of Review

A denial of a Rule 29(c) Motion for Judgment of Acquittal is reviewed *de novo*. *United States v. Canan*, 48 F.3d 954, 962 (6th Cir. 1995). However, the decision of the district court must be affirmed if the evidence, viewed in a light most favorable to the government, "would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (citing *United States v. Montgomery*, 980 F.2d 388, 393 (6th Cir. 1992)). A district court's findings of fact are reviewed for clear error. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002); *United States v. Matthews*, 278 F.3d 560, 561 (6th Cir. 2002).

#### 2. Analysis

Defendant argues that the United States failed to establish at the bench trial that he had crossed state lines with the intent to injure or harass Al-Shimary. Section 2261A has three main elements: (a) that interstate travel occurred; (b) that Defendant's intent was to injure or harass another person; and (c) that the person he intended to harass or injure was placed in reasonable fear of death or serious bodily injury to herself or a member of her family as a result of that travel.[2] *United States v. Vollmer*, No. 00-1093, 2001 WL 21234, at *1 (8th

---

[2]The statute provides:
Whoever travels in interstate . . . commerce . . . with the intent to kill, injure, harass, or intimidate another person and in the course of, or as a result of, such travel places that person in reasonable fear of the death of, or serious bodily injury to, that person, [or] a member of the immediate family . . . of that person . . . shall be punished as provided in section 2261(b).
18 U.S.C. § 2261A

Cir. Jan. 10, 2001); *United States v. Young*, No. 98-4742, 1999 WL 1203783, at *3 (4th Cir. Dec. 16, 1999).

The first element of 18 U.S.C. 2261A, that Al-Zubaidy crossed state lines, is established by the parties' stipulation that he traveled from Illinois to Michigan on October 28 or 29, 1997. The third element also weighs heavily against Al-Zubaidy; regardless of his intent, his actions as a result of his travel to Detroit certainly placed Al-Shimary in reasonable fear of death or serious bodily injury to herself or a member of her family. The district court's factual findings, that Al-Shimary's "fear was reasonable based on his [Al-Zubaidy] assaultive and abusive history, and he [Al-Zubaidy] expressly included death in his threats not only to her but to her father and mother, as well," easily survive our clear error review. *Matthews*, 278 F.3d at 561.

The second element of § 2261A looks to whether Al-Zubaidy's intent was to injure or harass Al-Shimary and her family when he crossed state lines. Al-Zubaidy is correct when he argues that § 2261A requires more than a showing that he crossed a state line and then later stalked Al-Shimary. He must have intended to harass or injure Al-Shimary at the time he crossed the state line. 18 U.S.C. § 2261A. While the district court made a factual finding that Al-Zubaidy's interstate travel took place "several days" after that of Al-Shimary and that he followed her to Detroit, the record is somewhat unclear as to exactly when Al-Shimary made her move. Al-Shimary also told her father at one point that Al-Zubaidy had come to visit her in Rockford (after the divorce, but before her move to Detroit) to see his children. That he also followed Al-Shimary to Detroit to be near his children, rather than harass Al-Shimary and her family, is plausible. Finally, even though Al-Zubaidy's harassment of Al-Shimary's family began almost immediately upon his arrival to Detroit, his first confirmed harassment of Al-Shimary in person did not occur until late December 1997 – almost two months after his arrival.

The evidence supporting the district court's finding that Al-Zubaidy possessed the requisite intent certainly "would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt" and thus survives our *de novo* review of the district court's denial of the Rule 29(c) motion. *Montgomery*, 980 F.2d at 393. The general rule in criminal cases is that "intent may be inferred from the totality of circumstances surrounding the commission of the prohibited act." *United States v. Stagman*, 446 F.2d 489, 493 (6th Cir. 1971). *See also Washington v. Davis*, 426 U.S. 229, 253 (1976) ("Frequently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor. For normally the actor is presumed to have intended the natural consequences of his deeds."); *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992) (the "general intent" of a defendant must be proved by "objectively looking at the defendant's behavior in the totality of the circumstances"); *Goldman v. Anderson*, 625 F.2d 135, 136 (6th Cir. 1980) ("[I]ntent . . . may be inferred from the totality of circumstances disclosed by the testimony. Such intent may be inferred from the nature, time or place of the defendant's acts . . . .").

The district court's factual findings that Al-Zubaidy moved to Detroit only a few days after Al-Shimary returned there to be near her parents has considerable support in the record. Al-Zubaidy's professed motive of reconciliation with his wife and children for moving to Detroit also holds little weight. Al-Shimary's father encouraged Al-Zubaidy to reconcile with his wife, and on two separate occasions Al-Zubaidy showed no interest whatsoever in doing so. The district court found that "there's simply no evidence to suggest that he [Al-Zubaidy] made any attempt to, or had any interest in, reconciling with his former wife." Under the totality of the circumstances test, Al-Zubaidy's proffered alternative motives for following his ex-wife to Detroit – reconciling with Al-Shimary or visiting his children – are minimized relative to his intention to "kill, injure, harass, or intimidate" under § 2261A. *Stagman*, 446 F.2d at 493.