**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0397n.06
Filed: June 14, 2007

**No. 05-6862**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| NICKIE N. AKINS, SR. | ) | **MEMORANDUM** |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

**BEFORE:     GIBBONS and McKEAGUE, Circuit Judges; and BERTELSMAN, District Judge.**[*]

    **McKEAGUE, Circuit Judge.**  A federal jury found Nickie Akins, Sr., guilty of distribution of cocaine base (aka "crack cocaine") and conspiracy to distribute cocaine base.  Akins moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c), which the district court denied.  On appeal, Akins argues that the Government offered insufficient evidence to sustain his conviction.  For the reasons stated below, we affirm.

**I**

---

    [*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Detectives from the Hamilton County, Tennessee Sheriff's Department, working with a confidential informant ("CI"),[1] conducted four controlled narcotics purchases with Akins. Hamilton Sheriff's deputies eventually executed a search warrant at Akins's residence on November 17, 2004. The search produced various drug related items, four grams of cocaine base, assorted weapons, and a black address book containing a drug ledger.

A grand jury indicted Akins, with several co-defendants, on December 15, 2004, on four counts of distributing and one count of possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841. Akins was also indicted on one count of conspiring to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846.

Police arrested Akins on April 8, 2005. Akins's trial began on August 3, 2005, and lasted two days. The prosecution argued that Akins distributed cocaine base on several specific occasions as well as conspired to distribute cocaine base generally between August and December 2004. CI Eddie Gray, witness Stanley Garrett, and co-defendant Gregory Sims testified on behalf of the Government. On August 4, 2005, the jury found Akins guilty of five counts of distributing cocaine base and one count of conspiracy to distribute at least 50 grams of cocaine base.

Akins timely appealed his conviction.

## II

### A.    Standard of Review

---

[1]The CI was Eddie "Bull" Gray who agreed to work for the government as a CI after he was arrested in October 2004 on drug-related charges.

We review the denial of a Rule 29(c) motion *de novo* and any underlying findings of fact for clear error. *United States v. Al-Zubaidy*, 283 F.3d 804, 808 (6th Cir. 2002).

Akins has a "heavy burden" to overcome to succeed on his insufficient-evidence claims. *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994). We must affirm the defendant's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (internal quotation marks omitted, emphasis in original). Akins's conviction must be reversed for insufficient evidence "only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (internal quotation marks omitted). A conviction can be upheld on circumstantial evidence and "such evidence need not remove every reasonable hypothesis except that of guilt." *Id*.

**B.  Distribution and Conspiracy to Distribute Cocaine Base**

Akins contends that there was insufficient evidence to convict him of the charges because the witnesses against him were felons who were either given immunity or seeking favorable treatment on separate charges. Simply put, whether several critical witnesses who testified against Akins were felons with questionable credibility was a matter for the jury as factfinder, not this court on appeal. The jury was made aware of the witnesses' criminal pasts and possible motives for

testifying.[2] "That the jury chose to believe their version of events rather than [Akins's] is well within its province." *United States v. Brown*, 54 F. App'x 201, 211 (6th Cir. 2002); *see also United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) ("In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury."); *United States v. Dorman*, 108 F. App'x 228, 238 (6th Cir. 2004) ("While several critical witnesses who testified against Stewart were convicted felons of suspect credibility, their pasts were made known to the jury. It is not our role to make credibility determinations, which is the province of the finders of fact.").

A brief review of the evidence submitted at trial confirms that the jury had more than sufficient evidence to convict Akins of distributing and conspiracy to distribute cocaine base.

### 1.     Distribution of Cocaine Base

Under 21 U.S.C. § 841(a)(1), the Government had the burden at trial to establish that "(1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute" that

---

[2]Gray admitted at trial that he was arrested for selling cocaine and that as a result of the arrest he agreed to work with the police as a confidential informant. It was disclosed to the jury that in exchange for his help, the authorities told him they would "try" to keep his case from being prosecuted at the federal level. Gray testified that he pleaded guilty to state charges and received eight years probation and two years house arrest. Gray admitted that he had been arrested for felonies in the past and that he used crack cocaine and other illegal drugs.

As to the other witnesses, Sims admitted during cross-examination that he sold drugs to support himself. Garrett admitted during his testimony that there were drug and burglary charges against him and that the investigating officer told Garrett that he would speak to the district attorney on his behalf. He also admitted that he "lik[ed] to smoke" crack cocaine. Finally, the jury heard testimony that Garrett was Gray's cousin.

controlled substance. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). Gray testified that he wore a wire during four controlled buys of crack cocaine from Akins. The jury listened to audio recordings from these buys. Gray explained during his testimony how the buys were conducted and that he bought drugs from Akins on each of these occasions. Akins made a number of incriminating statements on the tapes, including when he told Gray during one buy that "I've been giving you a good deal" on crack cocaine sales. Garrett also testified that he bought crack cocaine from Akins approximately sixty times.

Witnesses further testified that Akins bought drugs with the intention of reselling those drugs. Gray stated that he would "give [Akins] the drugs then when he's sell it, he'd pay me for them." Gray said that these "fronted" drugs amounted to an "ounce-and-a-half every ten days to two weeks" for approximately a year and a half. Sims testified that he also fronted drugs to Akins for resale.

The Government produced more testimonial and physical evidence to support its distribution charges against Akins. Gray and Garrett both testified that they had never seen Akins use crack cocaine before, creating the inference that Akins resold the crack cocaine he bought from them, rather than use it himself. Detective Andy Brown testified that the deputies found various scales, weapons, and almost five grams of crack cocaine during the search of Akins's residence. A reasonable jury could conclude that the items seized, including scales and multiple weapons (one of which was found loaded under a couch cushion), were the tools of a dealer and not a mere user.

Collectively, the testimony and physical evidence produced at trial gave the jury "substantial and competent evidence" that Akins knowingly possessed cocaine base with the intent to distribute it. Accordingly, we affirm his conviction under 21 U.S.C. § 841.

## 2. <u>**Conspiracy to Distribute**</u>

Akins also argues that there was insufficient evidence to sustain his conviction for conspiracy to distribute cocaine base. Appellant's Br. at 9. The Government had to prove that Akins took part in "(1) an agreement to violate drug laws, (2) [had] knowledge and intent to join the conspiracy, and (3) participat[ed] in the conspiracy." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). Here too the testimony of the Government's witnesses, bolstered by audio tapes played for the jury, provided "substantial and competent evidence" on which a reasonable jury could find a conspiracy to distribute drugs.

A reasonable jury could conclude that there was an agreement between the parties. The Government established the alleged time period of the conspiracy through Gray, who testified that he conducted drug deals with Akins for a year and a half, including the period of time alleged in the indictment. As to the existence of an "agreement," the Government is not required to produce "proof of a formal agreement" to establish a conspiracy. *United States v. Barger*, 931 F.2d 359, 369 (6th Cir. 1991). Instead, the Government must prove that the defendants were connected to the charged conspiracy. *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994). As explained *supra*, both Gray and Sims testified that they had an understanding with Akins that they would front him with cocaine, and he would pay them back after selling the drug. Akins's own words captured on tape support this contention.

A reasonable jury could also find that Akins intended to join the conspiracy. To establish intent, the Government needed to prove that Akins had the specific intent, actual or implied, to conspire with others to distribute cocaine. *United States v. Searan*, 259 F.3d 434, 441 (6th Cir.

2001). Gray testified that Akins would call and ask him if he had more crack cocaine. If Gray did have more drugs, then he would deliver them to Akins or they would be picked up by Akins's son, Garrett, or Akins himself. Garrett corroborated Gray's claim when he testified that he delivered crack cocaine to Akins a "couple of times." Akins's own words demonstrated his intent when he talked on the audio tapes about purchasing an ounce of crack cocaine and splitting the cost with Gray.

Furthermore, there was sufficient evidence for a reasonable jury to conclude that Akins did indeed participate in the conspiracy. Akins told Gray during one of the controlled buys that he was selling him crack cocaine that he had obtained from Sims. Keeping co-conspirators informed is an act that meets the furtherance requirement. *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000); *United States v. Monus*, 128 F.3d 376, 393 (6th Cir. 1997) ("Statements that identify participants and their roles in the conspiracy also qualify as statements made in furtherance of the conspiracy." (internal citations omitted)). In his third controlled buy, Akins told Gray "we got a new guy that's fixing to do me up (unintelligible)" and then proceeded to ask Gray if he "want[ed] in on it?" A co-conspirator's statement in regard to his access to drugs has also been held to further a conspiracy. *United States v. Hitow*, 889 F.2d 1573, 1581-82 (6th Cir. 1989).

## C.     The Amount of Cocaine Base

Finally, Akins argues that the Government offered insufficient evidence that the amount of crack cocaine involved in the conspiracy equaled at least 50 grams. Appellant's Br. at 9. The Government offered testimony and other evidence of various transactions between Akins and other

members of the conspiracy. While none of the transactions, standing alone, equaled at least 50 grams, when the transactions are aggregated, the total amount far exceeded the minimum threshold. For example, Gray testified that he fronted Akins an ounce-and-a-half or more of crack cocaine every two weeks or so over a significant period of time, including from August to October 2004, when Gray was arrested. An ounce equals about 28.35 grams, so an ounce-and-a-half equals about 42.53 grams. Consistent with Gray's testimony, he would have fronted Akins with approximately 42.53 grams of cocaine base on six different occasions between August and October 2004, totaling approximately 255.18 grams of cocaine base. As this amount easily satisfies the minimum threshold under 21 U.S.C. § 841(b)(1)(A), we reject Akins's final claim of error.

**III**

For the forgoing reasons, we AFFIRM Akins's convictions for distributing cocaine base and conspiracy to distribute at least 50 grams of cocaine base.