NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0453n.06

Case No. 22-5803

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 20, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | WESTERN DISTRICT OF |
| KEATRON WALLS, | ) | TENNESSEE |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: McKEAGUE, READLER and DAVIS, Circuit Judges.

STEPHANIE D. DAVIS, Circuit Judge. On April 5, 2022, a jury convicted Keatron Walls of six counts relating to the stalking and kidnapping of his former girlfriend, Felicia Odom, and the kidnapping of her new romantic partner, Curtis Walls, in violation of 18 U.S.C. §§ 1201(a)(1), 2261A(1), and 924(c). Walls now appeals, arguing that his convictions on two of these counts are invalid because (1) § 2261A(1) is an unconstitutional expansion of the Commerce Clause power, and (2) there was insufficient evidence presented at trial to show that he possessed the requisite intent to commit interstate stalking. He also challenges the procedural and substantive reasonableness of his sentence, arguing that the district court applied an incorrect Sentencing Guidelines provision to establish his base offense level and erred when it denied his request for a sentence variance based on his lengthy mental health history. For the following reasons, we **AFFIRM**.

I.

*Background.* Walls stalked Felicia Odom over the course of about 16 months, after she ended their relationship sometime between October 17 and 20, 2016. During this period, Walls committed serious acts of violence and intimidation against Odom and her family members, leading officials to obtain an indictment charging him with eleven counts[1] related to stalking and kidnapping. As relevant on appeal, Count 5 charged Walls with traveling from Tennessee to Mississippi with the intent to injure, harass, and intimidate Odom, in violation of 18 U.S.C. § 2261A(1). Count 6 was predicated on Count 5 and charged him with discharging a firearm during the commission of a crime of violence, in violation of § 924(c).[2]

At trial, the government presented evidence that, on November 23, 2016, armed with an assault rifle, Walls drove from the Clarksville, Tennessee area to the home of Odom's mother, Elizabeth Odom, in northern Mississippi. Odom and her young daughter lived there with Odom's mother. On that day, Odom, Curtis Walls, and several other relatives were present at the home. That evening, Walls called the home's landline telephone number and asked Odom, who had answered the phone, whether her young daughter was home. Odom hung up the phone once Walls identified himself. As it happens, Odom's daughter had left the house with her father about 20 minutes before the call. Within minutes of speaking with Odom on the phone, Walls showed up outside the house and fired multiple gunshots through the home's front window. Several of the home's occupants were sitting in the living room and were visible through the window. The gunshots injured four of Odom's relatives who were inside the home at this time. One victim

---

[1] The government moved to dismiss Counts 4 and 11 before trial.

[2] The jury also convicted Walls on Counts 7 through 10, which charged him with kidnapping Odom and her romantic partner on April 20, 2018, and transporting them between Tennessee and Mississippi state lines for the purposes of harassment, assault, retaliation, and intimidation, in violation of § 1201(a)(1). We decline to recount those details here because his appeal solely challenges his convictions as to Counts 5 and 6.

suffered internal injuries after being shot in the lower abdomen and also had to have his finger amputated; another had to undergo a below-the-knee amputation of his right leg as a result of his injuries.

According to Odom's mother, Walls had foreshowed this shooting about a month earlier in the days after Odom ended her relationship with him. Specifically, Odom's mother testified that Walls had come to her home on October 29, 2016, a day after he allegedly had taken and held Odom against her will the evening before. During his visit, he confessed that he had hit Odom as "hard as [he] could" in an effort to provoke her to tears while she was with him. He then asked whether she would cry if he fired gunshots into her mother's home when that tactic failed.

Evidence revealing the events of November 23, 2016, and demonstrating Walls's intent to injure or harass Odom that day was extensive. Multiple witnesses testified about the November 23, 2016, shooting. Law enforcement officers found an assault rifle in Walls's car and a firearms identification expert testified that the shell casings from the November 23, 2016 shooting matched this weapon. Further, phone records showed that Walls used two cellular phones that day, a fact that supported a reasonable inference that he did so to create a false alibi based on his whereabouts during the shooting. Specifically, cellular site analysis showed that one of Walls's phones stayed near a cousin's home in Olive Branch, Mississippi and that this phone had received and placed calls on November 23, 2016. Yet, data associated with Walls's other phone showed that it was located near Elizabeth Odom's residence for an extended period that day and quickly moved away from the scene after gunshots were fired into her home.

Walls moved for judgment of acquittal at the end of the government's proof and then again after closing arguments. The district court denied both motions. Afterward, the jury returned a

verdict, acquitting Walls of three charges pertaining to the alleged October 2016 kidnapping and convicting him on the remaining counts.

At Walls's sentencing hearing, he received a sentence of 444 months' imprisonment, based in part on the district court's application of U.S.S.G. § 2A2.1(a)(1) by way of cross-reference from § 2A6.2. Walls objected to the court's application of § 2A2.1(a)(1). He also requested a sentencing variance based on his mental health history. But the district court overruled Walls's objection and denied his request for a variance.

Walls appeals, challenging the constitutionality of 18 U.S.C. § 2261A—the statute under which he was convicted for Count 5 and the predicate offense for Count 6. He also disputes the sufficiency of evidence presented at trial, the denial of his Motion for Judgment of Acquittal, and the procedural and substantive reasonableness of his sentence.

II.

We first consider Walls's challenge to the validity of his convictions as to Counts 5 and 6. Although we typically review "questions of law and statutory interpretation *de novo*," *United States v. Al-Zubaidy*, 283 F.3d 804, 810 (6th Cir. 2002), because Walls failed to raise his constitutional challenge in the trial court, we review this claim for plain error. *United States v. Al-Maliki*, 787 F.3d 784, 791 (6th Cir. 2015); *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008). "To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (quoting *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)). "The plain error doctrine mandates reversal only in exceptional circumstances and only where the error is so plain that the trial judge and

prosecutor were derelict in countenancing it." *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994) (cleaned up).

A.

*Constitutionality of 18 U.S.C. § 2261A(1)*.  Walls argues, for the first time on appeal, that both his stalking conviction and the firearm conviction predicated on it are invalid because § 2261A(1) is an unconstitutional expansion of Congress's authority under the Commerce Clause of the United States Constitution.  His argument hinges on the assertion that the conduct here occurred all in one state and thus does not properly implicate the Commerce Clause.  He posits that Congress has encroached upon states' sovereignty in seeking to punish criminal activity that is limited within an individual state's borders.  As pertains to his criminal conduct on November 23, 2016, he insists that it occurred in only one state: Mississippi.  This is because he had not formed the requisite "intent" to "injure, harass, and intimidate another person" when he traveled from the Clarksville, Tennessee area into northern Mississippi.  Rather, he crossed state lines that day to attend a family gathering and ostensibly decided to shoot into Elizabeth Odom's home only *after* he entered Mississippi.  Accordingly, he argues that upholding his conviction under § 2261A(1) and his related conviction under § 924(c) would undermine Mississippi's prosecutorial authority by permitting the federal government to regulate conduct that has "very little, if any, effect on or use of the channels of [the] interstate."  (Dkt. 17, PageID 21).

As an initial matter, we have previously upheld the constitutionality of § 2261A(1) and are bound by this precedent.  *See Al-Zubaidy*, 283 F.3d at 811–12; *see also*, *United States v. Roberts*, No. 22-3587, 2023 WL 6814956, at * 8 (6th Cir. Oct. 17, 2023).  The statute punishes a defendant, who:

> travels in interstate or foreign commerce . . . with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or

> intimidate another person, and in the course of, or as a result of, such travel . . . places that person in reasonable fear of the death of, or serious bodily injury to[,] that person [or] an immediate family member . . . of that person.

§ 2261A(1)(A)(i)-(ii).

In *Al-Zubaidy*, we reiterated that the Commerce Clause empowers Congress to regulate (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, including persons or things in interstate commerce, and (3) intrastate activity if it has a substantial effect on commerce. *Id.* at 810. Because longstanding jurisprudence endorses Congress's extensive power under this first category, *see, e.g.*, *United States v. Darby*, 312 U.S. 100, 114 (1941); *see also United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (collecting cases and outlining the three categories), we explained that a statute that "punishes persons for using the channels of interstate commerce to bring 'the spread of any evil or harm to the people of other states from the state of origin' is directly within Congress's Commerce Clause power." *Al-Zubaidy*, 283 F.3d at 811 (quoting *Brooks v. United States*, 267 U.S. 432, 436 (1925)). Finding that § 2261A(1) performs this exact function by making it a crime to travel in interstate or foreign commerce with the intent to stalk another person, we concluded that its enactment constituted a proper exercise of congressional power. *Id.* at 811–12.

Walls, nevertheless, urges us to overturn our decision in *Al-Zubaidy* in light of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022). He says that decision has "heralded . . . a 'new era' of interstate Commerce Clause jurisprudence," that compels our reconsideration of a long-settled matter. (Dkt 17, PageID 19). Yet he offers no explanation as to how that might be the case, and we discern none.

Notably, the *Dobbs* decision does not discuss the scope of the Commerce Clause power or any congressional power for that matter. *See generally Dobbs*, 142 S. Ct. 2228. Despite this

silence, Walls argues that, because *Dobbs* holds that the issue of abortion should be decided by the States, the same is true for "the question of the prosecution of alleged illegal acts that occur solely in one state." (Dkt. 17, PageID 20). This argument invites a misapplication of *Dobbs* and fails for at least two additional reasons. First, § 2261A(1) does not regulate intrastate activity, as Walls contends. And we know this because its plain language explicitly includes interstate travel as a jurisdictional element. As we observed in *Al-Zubaidy*, a statute that includes "an explicit jurisdictional element requiring interstate travel" falls within the first category of Commerce Clause regulation and is therefore "well within Congress's plenary authority." 283 F.3d. at 812. Second, his contention that his own criminal activity on November 23, 2016 occurred solely in one state is a factual argument that has no bearing on the constitutionality of the statute. And on that score, as discussed in our sufficiency-of-the-evidence analysis below, the jury considered the evidence and ultimately rejected Walls's proffered view. We will not disturb the jury's factual determination simply because Walls insists. *See United States v. Assfy*, No. 20-1630, 2021 WL 2935359, at *5 (6th Cir. July 13, 2021) ("We do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." (cleaned up)); *see also United States v. Volkman*, 797 F.3d 377, 394 (6th Cir. 2015). Thus, there is no legitimate concern that § 2261A(1) or Walls's prosecution pursuant to this statute violated any constitutional principle. No error was committed.

B.

*Sufficiency of Evidence*. Walls next argues there was insufficient evidence on which to convict him of Counts 5 and 6. He insists that the government failed to present any "real evidence" at trial to show beyond a reasonable doubt that he possessed the requisite "intent" to "injure, harass, and intimidate another person," as required by § 2261A(1), when he traveled from the Clarksville, Tennessee area into Mississippi on November 23, 2016. As a result, says Walls, the district court erred when it denied his Motion for Judgment of Acquittal.

We review challenges to the sufficiency of the evidence and the denial of a motion for a judgment of acquittal *de novo*. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). Applying this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Williams*, 998 F.3d 716, 727 (6th Cir. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction under this deferential standard of review." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). Indeed, "[t]he general rule in criminal cases is that intent may be inferred from the totality of the circumstances surrounding the commission of the prohibited act." *Al-Zubaidy*, 283 F.3d at 809 (internal quotation marks and citation omitted).

As discussed, § 2261A(1) requires a showing that: (1) interstate travel occurred, (2) the defendant's intent was to kill, injure, harass or intimidate another person; and (3) the person he intended to target was placed in reasonable fear of death or serious bodily injury to herself or (among others) her intimate partner as a result of that travel. *Id.* at 808. It is not enough that a defendant crossed state lines and then later stalked his victims. *Id.* at 809. Rather, he must have possessed the requisite intent at the time he crossed state lines. *Id.*

The evidence of Walls's conduct before, on, and after the November 23, 2016, shooting provided ample support to find that he possessed the intent to injure or harass Odom when he crossed state lines that day. Odom testified that Walls had held her captive and sexually assaulted her just a month before. Elizabeth Odom corroborated that her daughter was taken against her will and added that, when Walls freed Odom the next day, he confessed that he asked Odom about how she would react if he fired gunshots into her mother's home. The evidence presented showed that Walls actualized this hypothetical a few weeks later. Specifically, testimony at trial established that the shell casings found at the scene of the November 23, 2016, shooting were fired from a 7.62mm rifle and that law enforcement found just such a rifle in the car that Walls drove from Tennessee to Mississippi that same day. It was thus reasonable for the jury to infer that Walls transported the rifle from one state to the other because he intended to use it. Further, cellular site data analysis suggested that Walls attempted to create a false alibi to conceal his intentions by using a decoy phone to place and receive calls on the day of the shooting from a location other than Elizabeth Odom's home. Moreover, the evidence of the April 20, 2018, kidnapping for which Walls was also convicted, showed that Walls continued to nurse and maintain his intent to injure or harass Odom over the course of many months. Based on the totality of the circumstances and viewing the evidence in the light most favorable to the prosecution, this evidence was sufficient to permit a rational trier of fact to conclude that Walls possessed the requisite intent to injure or harass Odom. Accordingly, the district court's denial of Walls's Motion for Judgment of Acquittal also survives our *de novo* review.

III.

Walls lastly challenges his sentence as unreasonable and contends that the district court erred when it denied his request for a downward variance under 18 U.S.C. § 3553(a) given his lengthy mental health history.

A.

*Application of U.S.S.G § 2A2.1.* Revisiting his earlier argument, Walls asserts that the district court erred when it applied U.S.S.G. § 2A2.1, rather than § 2A2.2, to determine his offense level because there was insufficient evidence to find that he intended to murder Odom on November 23, 2016. Specifically, he argues that there was no evidence at trial to show that he threatened to kill Odom "at any point on or before November 23, 2016," (Dkt. 17, PageID 29), and that the government's reliance on the threat he made to fire a weapon into Elizabeth Odom's house after the events of October 28, 2016, is faulty because the jury acquitted him of the only federal charges (i.e., Counts 1 through 3) he faced for his conduct from that day. He also contends that, even if this Court should accept the district court's finding that he fired gunshots into "a home," that finding does not permit a reasonable inference that he intended to kill Odom or any other person in the home at the time because the home's window acted as a "significant barrier between [himself] and [his victims]." (*Id.*, PageID 31). Based on the evidence presented at trial and the district court's factual findings at sentencing, these arguments have no merit.

"When reviewing challenges to sentence enhancements, we review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Howell*, 17 F.4th 673, 689 (6th Cir. 2021) (cleaned up).

Crafting any defendant's sentence begins with properly calculating the advisory range from the United States Sentencing Guidelines. The district court first looked to § 2A6.2, the sentencing

guideline for stalking or domestic violence offenses, to establish Walls's base offense level. With respect to Count 5, the court applied § 2A6.2(c)'s cross-reference provision which addresses offenses that involve the commission of another criminal offense. In that instance, the provision directs the court to apply the "offense guideline from Chapter Two, Part A (Offenses Against the Person) most applicable to that other criminal offense" if it results in an offense level greater than that calculated under § 2A6.2(a) and (b). Based on this directive, the district court applied § 2A2.1(a)(1) to obtain Walls's base offense level, reasoning that (1) the trial evidence showed Walls had attempted first degree murder on November 23, 2016, when he fired into Elizabeth Odom's home in northern Mississippi and (2) this guideline provided a higher offense level. Walls objected to § 2A2.1(a)(1)'s application, arguing that the jury "only found" that he had crossed state lines with the intent to commit stalking—not murder. Thus, Walls argued that the court should instead apply § 2A2.2, the sentencing guideline for aggravated assault. The district court overruled the objection, finding there was "significant proof" that Walls stalked Odom on November 23, 2016, with the intent to kill.

Section 2A2.1(a)(1) applies "if the object of the offense would have constituted first degree murder." For purposes of this guideline, "murder" is the "unlawful killing of a human being with malice aforethought." *Howell*, 17 F.4th at 690 (citation omitted). A murder is "in the first degree" if perpetrated willfully, deliberately, maliciously, or with premeditation. *Id.* Attempted murder requires a specific intent to kill. *Id.* Thus, "[t]o apply the attempted murder guideline, the district court must find that the defendant possessed the specific intent to kill, unless the facts presented inevitably lead to [such] a finding." *Id.* (quoting *United States v. Morgan*, 687 F.3d 688, 697 (6th Cir. 2012) (internal quotation marks omitted)).

Here, the district court specifically pointed to trial testimony that (1) the victims were visible to Walls through the window of Elizabeth Odom's home; (2) Walls called Elizabeth Odom's landline telephone number to confirm whether Odom's young daughter was present in the home minutes before the shooting; and (3) Walls had made prior statements about firing gunshots into Elizabeth Odom's home to support its finding that Walls's conduct constituted "assault with intent to commit the murder in the first degree." (R. 122, PageID 1846).

Walls's contention that a glass window separated him from his victims does not diminish the weight of this evidence or lead us to a "definite and firm conviction that a mistake has been committed." *Howell*, 17 F.4th at 691 (citation omitted). On the contrary, the district court's findings align with an observation we have made on multiple occasions that "specific intent to kill could be inferred from a defendant firing a gun aimed at an individual." *Id.* at 690 (quoting *United States v. Bradford*, 822 F. App'x 335, 339 (6th Cir. 2020)); *see also United States v. James*, 575 F. App'x 588, 596–97 (6th Cir. 2014). Walls knew Odom was inside the home at the time he used an assault rifle to fire multiple shots into her mother's house. While it was dark outside, the inside of the house was illuminated by light—a fact that buttresses the district court's conclusion that Walls could see his victims. Moreover, on at least one prior occasion, Walls had threatened to kill Odom.[3] From these facts, the district court reasonably concluded that a preponderance of the evidence demonstrated that Walls did not simply act recklessly, as he contends, but that he had the specific intent to kill. As such, it properly concluded that § 2A2.1(a)(1) contained the appropriate cross-reference, and no reversible error occurred.

---

[3] To the extent that the district court relied on Walls's acquitted conduct to determine his sentence, we find that this decision is permissible and supported by circuit precedent. *See United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc) (finding that trial courts may rely on acquitted conduct when selecting a sentence within the statutory range "as long as the sentence imposed falls within the range prescribed by law for [the] *convicted* conduct") (emphasis in original).

B.

*Substantive and Procedural Reasonableness of Sentence*. Finally, Walls challenges the reasonableness of his sentence, a claim we review for abuse of discretion. *United States v. Brooks*, 628 F.3d 791, 795 (6th Cir. 2011). "A district court's sentencing decision must be both procedurally and substantively reasonable." *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). Procedural reasonableness focuses on the method that the district court used to arrive at the length of a sentence while substantive reasonableness considers whether the length of the sentence itself is reasonable given the "totality of the circumstances." *Id.* (citation omitted). Procedural reasonableness requires that the district court "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629–30 (6th Cir. 2008) (quoting *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)). These factors include, among other things, the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

Walls argues that the district court offered only passing consideration of his mental health history and thus abused its discretion when it denied his request for a downward variance under § 3553(a) given his various mental health disorders. We disagree.

The record shows that the district court devoted considerable attention to Walls's mental health history. Walls's Presentence Report ("PSR") included several paragraphs describing his mental health conditions from childhood well into adulthood. The district court expressly took into consideration all "information contained in the presentence report," along with "all information [that had] been presented" on Walls's mental health history, including a report from a psychiatric evaluation that documented and explained several mental health diagnoses he has

received. (R. 122, PageID 1905; 1909.) Only after considering each of these pieces of information about Walls's mental health history did the district court deny his request for a variance. Importantly, the district court balanced any concerns about Walls's mental health history against other factors to be weighed under the statute. The court explained at the sentencing hearing that it denied Walls's request because it could not find sufficient support to vary from the Guidelines range given the combination of the extreme nature and seriousness of his offenses and their impact on his victims, as well as the need to deter others from engaging in similar conduct in the future—also important considerations under § 3553(a). This explanation "provide[s] enough detail to allow [this Court] . . . to conclude that the district court adequately considered the relevant statutory factors." *Presley*, 547 F.3d at 630 (citation omitted). As noted, Walls stalked Odom for months, kidnapped her and Curits Walls on at least one occasion, and shot four of Odom's relatives with a high-caliber assault rifle—permanently maiming two of them. The district court thus afforded Walls the appropriate procedural protections he was due: after calculating the Guidelines range[4] and recognizing its authority to depart or vary from them, it weighed the factors set forth in § 3553(a) and reasonably concluded that it should adhere to the Sentencing Guidelines. We find nothing to suggest that it abused its discretion by doing so.

Although Walls also asserts that his sentence is substantively unreasonable, he develops no argument as to why that is the case. It is well settled in this circuit that, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th

---

[4] Other than the application of U.S.S.G. § 2A2.1, which we have determined was properly applied here, neither party has disputed the accuracy of the Guidelines calculations on appeal. We therefore presume, without deciding, their overall correctness here.

Cir. 1997) (citation omitted). Even were that not the case, we discern no reason to find that the district court abused its discretion. "The substantive reasonableness inquiry determines if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Small*, 988 F.3d 241, 258 (6th Cir. 2021). This inquiry includes whether the district court arbitrarily decided on a sentence, based "the sentence on impermissible factors," failed "to consider relevant sentencing factors," or gave "an unreasonable amount of weight to any pertinent factor." *Id.* at 259 (citation omitted). Walls's sentence is in no way arbitrary given the district court's well-supported factual findings and reasonable weight afforded to the statutory sentencing factors. Moreover, his sentence falls within the recommended guideline range and is presumptively reasonable. *See Brooks*, 628 F.3d at 796 ("Sentences that fall within the applicable Guidelines range are rebuttably presumed to be reasonable."). Walls has offered nothing to rebut the presumption of reasonableness for his within-Guidelines sentence. And given our discussion of the district court's articulated reasoning for sticking to the Guidelines, we find nothing to suggest that it abused its discretion by doing so here.

IV.

For all above stated reasons, we **AFFIRM**.