**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Martha Joyce RANSBOTTOM,**
**Defendant–Appellant.**

**No. 89–6314.**

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1990.

Decided Sept. 10, 1990.

Certiorari Denied Nov. 13, 1990.

See 111 S.Ct. 439.

---

John W. Gill, Jr., U.S. Atty. and David Dake, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

Ronald P. Smith (argued), Knoxville, Tenn., for defendant-appellant.

Before: KENNEDY and KRUPANSKY, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Defendant Martha Joyce Ransbottom appeals her conviction and sentence for violating the federal murder-for-hire statute, 18 U.S.C. § 1958. For the reasons that follow, we affirm the district court in all respects.

## I.

A mutual friend introduced Ransbottom to Jerry Ownby in Gatlinburg, Tennessee on March 14, 1989. Ransbottom had asked the friend, James Reagan, to refer her to someone who could do a job for her. Because Reagan and Ransbottom had had prior real estate dealings, Reagan assumed that Ransbottom needed someone to do some type of maintenance work. He contacted Ownby, who was a builder and stone mason.

After Reagan had left Ransbottom and Ownby alone, Ransbottom asked Ownby to kill her husband, who had left her and was living with another woman in Kentucky. Ownby suggested divorce; however, Ransbottom thought that divorce was inappropriate. She explained that her husband had cheated certain people, and she was concerned that she would have to pay them back. Ransbottom offered to go to Kentucky to obtain pictures of the place where her husband was living and a map that would direct Ownby to the residence.

Ownby did not expressly agree during this meeting to do the job. Ransbottom asked him to quote a price; however, he told her that he would have to think about it. Subsequently, Ownby told a friend who was in law enforcement about Ransbottom's request. This friend referred Ownby to the FBI, which sought and obtained Ownby's cooperation. Although Ownby testified at trial that he could not remember the exact date, he stated that sometime after he had talked to the authorities, he told Ransbottom during a telephone conversation that he would kill her husband.

Ransbottom traveled to Lexington, Kentucky on March 16, 1989. She met with a friend, Thomas Bridges, whom she had called earlier in March to talk about her husband's having left her. Ransbottom told Bridges that she needed to locate the place in Augusta, Kentucky where her husband was living, because she wanted to be able to give this information to creditors and IRS agents, who, she expected, would visit her in the future.

On March 18, Bridges drove Ransbottom to Augusta, Kentucky. Ransbottom, a redhead, donned a dark colored wig and sunglasses for the trip. Once in Augusta, Bridges used a phone book to match the name and phone number of the woman with whom Ransbottom's husband was living with the address listed in the book. After they had found the residence, Ransbottom took photographs and drew a map. They returned to Lexington that night, and Bridges did not see Ransbottom again until March 25, in Gatlinburg.

On March 24, Ownby, in response to a telephone request from Ransbottom, met her in a restaurant parking lot in Gatlinburg. Ownby carried a tape recorder on his person, and FBI agents watched them from a distance. Ransbottom gave Ownby the photographs and had him copy the map that she had drawn. She asked Ownby to

quote a price. He asked for $5,000, which Ransbottom agreed to pay once she had received $10,000 from her husband's life insurance policy. Ransbottom also gave Ownby $200 for expenses associated with his contemplated travel. She asked Ownby to call her when he was ready to go to Kentucky, so that she could make plans to be with friends, for alibi purposes.

Ownby called Ransbottom the next day to advise her that he was going to Kentucky. FBI agents arrested her that same day. She was indicted for violating the federal murder-for-hire statute, was tried, and was convicted by a jury. With respect to sentencing, the probation department calculated a range of 46–57 months; however, it recommended a two-level reduction to 37–46 months for Ransbottom's acceptance of responsibility. The district court did not accept the recommendation; however, it sentenced Ransbottom to only 46 months.

Ransbottom now appeals her conviction and sentence, alleging that the evidence does not support a conviction under the murder-for-hire statute, that the district court erred by refusing to instruct the jury on the crime of solicitation, and that the court's refusal to reduce her offense level for acceptance of responsibility was clearly erroneous.

## II.

Ransbottom contends that the evidence is insufficient to support a conviction under the federal murder-for-hire statute. The standard of review of this question is whether, considering the evidence presented in the light most favorable to the government, including all reasonable inferences that can be drawn therefrom, any rational trier of fact could have found that all elements of the offense were established beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Elkins,* 732 F.2d 1280, 1287 (6th Cir.1984).

The statute at issue provided in pertinent part:

**§ 1958. Use of interstate commerce facilities in the commission of murder-for-hire**

(a) Whoever travels in or causes another ... to travel in interstate ... commerce, ... with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, shall be fined not more than $10,000 or imprisoned for not more than ten years, or both; ....

18 U.S.C. § 1958 (Supp.1989). Ransbottom's challenge is one of law rather than one of fact. She does not deny that she conducted herself as alleged by the government. Instead, she asserts that her conduct did not constitute a violation of the murder-for-hire statute.

Specifically, Ransbottom contends that the statute contemplates participation by at least two persons, i.e., the travel must be in furtherance of a completed agreement, based on consideration, that a contract murder be committed. Here, according to her, at the time of her travel there was no completed agreement and no consideration; therefore, the government could not prove a violation of the statute.

Ransbottom bases her challenge on the legislative history of § 1958, which refers to the typical example of a "hit man" traveling in interstate commerce to commit the murder. In such a case, both the payor and the hit man may be prosecuted for violating the statute. While we agree that this typical example is within the statute's express proscription, the question before this court is whether Ransbottom's conduct in this case also is proscribed.

To decide this question, we do not look first to the legislative history. Instead, we apply the well-known rule that statutory construction begins with the plain words of the statute. *See In re Revco D.S., Inc.,* 898 F.2d 498, 500 (6th Cir.1990). We are to give words their ordinary, common meaning. *Id.* Only if we determine that the language of the statute is ambiguous do we turn to the legislative history. *See*

*United States v. Barry*, 888 F.2d 1092 (6th Cir.1989).

■ On its face, the statute at issue allows a conviction if the government proves that a defendant traveled in interstate commerce with the intent that a contract murder be committed. This requirement is plain and unambiguous. Moreover, the statute gives no indication that the contract must be in existence and that the consideration must have been provided at the time of the travel. Applying the plain language of the statute to the facts of this case, we believe that Ransbottom's argument must fail.

■ In the instant case, the defendant went to Kentucky to obtain materials that were to be used to aid a contract killing. She sought and obtained the pictures and map so that Ownby could use them to find and kill her husband. Upon her return, she gave the map and pictures to Ownby so that he could carry out the killing. Her conduct while she was traveling in interstate commerce plainly was for the purpose of facilitating the contract killing that she was negotiating with Ownby. Therefore, the proof was sufficient to lead a rational jury to the conclusion that Ransbottom had violated the statute.

■ Moreover, we further do not agree with Ransbottom that § 1958 is solely an anti-conspiracy statute. Although we are aware that the Fifth Circuit has referred to a violation of the statute as a conspiracy, *see United States v. Edelman*, 873 F.2d 791, 793 (5th Cir.1989), we do not read that decision as holding that § 1958 has no force or effect against a sole perpetrator. We believe that to so hold would do violence to the statute's plain meaning.

## III.

At trial, Ransbottom contended that the tape recording of the conversation between her and Ownby after her trip to Kentucky would only be evidence of a crime with which she was not charged, i.e., solicitation to commit a crime of violence, pursuant to 18 U.S.C. § 373.[1] Her contention was based on her theory that, under a proper interpretation of § 1958, she could not be guilty of violating that statute. Accordingly, Ransbottom now contends that the tape should not have been admitted into evidence for any purpose. Her fallback position, which she also asserted at her trial, was that, even if she could have been found guilty of a violation of § 1958, the taped conversation would only have been admissible to the extent that it showed her intent to commit a violation of § 1958 and not to support the uncharged crime of solicitation.[2] Her contention is that the jury should have been so instructed.

We have, of course, heretofore determined that under the proof Ransbottom could have been found guilty of violating § 1958; therefore, proof of her conversation with Ownby was admissible.

We believe further that the district court's charge adequately presented Ransbottom's theory when it charged that she could be found guilty only if the proof showed beyond a reasonable doubt that Ransbottom had traveled in interstate commerce with intent that a murder be committed for pecuniary gain and that she could not be found guilty of any charge not contained in the indictment.

## IV.

Ransbottom challenges the district court's finding that she had not accepted

---

**1.** Section 373 provided in pertinent part:

**§ 373. Solicitation to commit a crime of violence.**

(a) Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; ....

18 U.S.C. § 373 (Supp.1989).

**2.** Ransbottom is relying here on Federal Rule of Evidence 404(b), which permits the introduction of evidence of other crimes to prove a defendant's intent to commit the crime charged.

responsibility. We review this claim under a clearly erroneous standard. *See United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989) (citing with approval *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989)); *see also* United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 comment. (n. 5) (November, 1989) ("[T]he determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."). A finding is clearly erroneous when, although there is evidence to support it, the entire evidence leaves the reviewing court with a definite and firm conviction that the lower court made a mistake. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The Sentencing Guidelines permit a court to reduce the defendant's base offense level by two if the court finds that the defendant accepted responsibility. U.S.S.G. § 3E1.1. The Guidelines provide an illustrative, yet not exhaustive, list of considerations to assist the court in making its finding. The list includes the following: voluntary termination or withdrawal from criminal conduct or associations; voluntary payment of restitution before being found guilty; voluntary, truthful admission of involvement in the crime; prompt, voluntary surrender; voluntary assistance to authorities in the recovery of fruits or instrumentalities; voluntary resignation from the criminal enterprise; and the timeliness of the defendant's conduct manifesting an acceptance of responsibility. *Id.* comment. (n.2). None of these considerations is present here.

 Ransbottom maintained her innocence throughout her trial. She insisted on a trial, a fact that, in and of itself, would not prevent a court from finding that she had accepted responsibility, especially when, as here, she made a challenge to the applicability of the statute to her conduct. *See id.* Moreover, she and her attorney stated at the sentencing hearing that although Ransbottom believed that what she had done was not a crime, she was sorry for wanting her husband dead. However, the government points out that after her arrest, Ransbottom did not assist the government in determining whether there was an accomplice who might be putting her husband in further danger.

The district court stated at the sentencing hearing that Ransbottom had not carried her burden to show that she had accepted responsibility for her crime. We are unable to say, based on the evidence before us, that the district court's determination was clearly erroneous.

For the foregoing reasons, we AFFIRM the defendant's conviction and sentence.