NOT RECOMMENDED FOR FULL-TEXT PUBLICATON
File Name: 14a0200n.06

Case Nos. 11-5356, 11-5357

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 14, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| LORRANCE DAIS and ABRAHAM | ) | TENNESSEE |
| AUGUSTIN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| _____ | ) | |

**Before**: **GILMAN, COOK, and McKEAGUE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** This appeal arises from events that occurred after a failed drug deal. In December 2009, Abraham Augustin agreed to pay $5,100 to a man known only as "Hoss" in exchange for six ounces of powder cocaine. Neither Augustin nor Hoss, however, honored the bargain. Augustin paid only $4,200, and the cocaine turned out to be fake. In an attempt to recoup the $4,200, Augustin and codefendant Lorrance Dais abducted Robert Jordan, the middle man in the drug transaction, and Jordan's friend Curtis Smith, and held the former for ransom. Augustin and Dais were later arrested for the kidnapping.

After a three-day trial, Augustin was convicted on one count of kidnapping, in violation of 18 U.S.C. § 1201; on one count of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); on one count of being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); on one count of using the mail with the intent to commit murder for hire, in violation of 18 U.S.C. § 1958; on three counts of hiring a person to kill three witnesses with the intent to prevent their attendance and testimony at trial, in violation of 18 U.S.C. § 1512(a)(1)(A); and on one count of attempting to obstruct and influence and impede a trial by attempting to have witnesses killed, in violation of 18 U.S.C. § 1512(c)(2).

Dais was convicted on one count of kidnapping, in violation of 18 U.S.C. § 1201; on one count of using and carrying a firearm during and in relation to the kidnapping, in violation of 18 U.S.C. § 924(c)(1)(A); and on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

On appeal, Augustin and Dais argue that (1) the government's evidence was insufficient to support their convictions on various counts; (2) the federal kidnapping statute, as amended in 2006, is unconstitutional both on its face and as applied to the facts in this case; (3) the district court erred in declining to sever their trials; (4) the court's finding that Augustin discharged a firearm violated his rights under *Alleyne v. United States*, 133 S. Ct. 2151 (2013); (5) the jury instructions and the evidence at trial constructively amended or varied from the Superseding Indictment; and (6) their sentences are substantively unreasonable.

## I.  BACKGROUND

### A.  Factual background

The crucial events in this case occurred in a Chattanooga nightclub, at a nearby gas station, and in a rural area outside of Cleveland, Tennessee.  Following their meeting at a nightclub called "Club Drinks," Augustin called Jordan and said that he wanted to purchase six

ounces of powder cocaine. Jordan, who is not a drug dealer, contacted a man named Hoss, who agreed to sell six ounces of cocaine to Augustin for $5,100.

The drug exchange took place at a gas station in Chattanooga. Augustin gave the cash to Jordan, who delivered the payment to Hoss, who then handed over the cocaine that Jordan delivered to Augustin. Smith was present at the gas station, but stayed in Jordan's vehicle during the transaction.

Augustin and Hoss were both dissatisfied with the transaction. Hoss contacted Jordan and said that he had been shorted $900. Jordan, hearing this information, called Augustin, who eventually agreed to meet the following morning for the purpose of "pay[ing] up."

When Jordan and Smith arrived at the meeting place the next day, Augustin told them to get into his BMW. Dais was already sitting in the driver's seat. Augustin and Dais then drew firearms, told Jordan and Smith that they were being kidnapped, confiscated their cellular telephones, and informed them that the cocaine from the earlier drug transaction was fake. The kidnappers handed back Smith's cellular telephone and instructed him to call a particular number to deliver their demands: they sought either the return of the $4,200 that Augustin had already paid, the delivery of real cocaine, or access to Hoss. Augustin then released Smith, but not before stating that he would kill both Smith and Jordan if the police were contacted.

Dais proceeded to a rural area near Cleveland, Tennessee, with Jordan blindfolded and bound in the back seat. Dais parked the car near a field and removed Jordan's blindfold. Augustin and Dais then returned Jordan's cellular telephone and instructed him "to call to get the demands." What Augustin was demanding was a ransom of $4,200 in order to recoup the amount that he had given Jordan for what turned out to be fake cocaine.

Jordan used his cellular telephone to call Deidre Watkins, his mother, who initially hung up because she thought her son was joking about being kidnapped. After this, Augustin aimed his gun at Jordan's head and told him to "tell her what happened." Jordan complied, and Watkins agreed to bring the ransom money to a nearby gas station.

While waiting for Watkins to call with information about the money, Augustin again threatened Jordan, claiming that he could kill and bury him at their current location. Augustin placed one bullet into the chamber of his revolver, spun the cylinder, aimed the weapon at Jordan's head, and pulled the trigger. The revolver did not fire. Augustin then fired one shot at a passing bird, presumably to prove that the revolver worked.

The kidnappers were eventually arrested after a bank teller told the police about Watkins withdrawing $4,200 from her personal account to satisfy a ransom demand. Augustin and Dais were then booked on state charges and released on bond. After being released, Augustin called Jordan to say "[i]f you don't show up in court and testify, you know, it's okay." Jordan subsequently contacted Special Agent Wayne Jackson of the Federal Bureau of Investigation, who obtained and executed federal arrest warrants for Augustin and Dais.

A short time later, another law-enforcement officer reported that Augustin had made a call from a jail telephone to arrange to "have something done" to the witnesses in this case. This same law-enforcement officer also reported that Augustin intended to mail a letter in which "he was asking for somebody to help do away with the witnesses." Special Agent Jackson retrieved this mailing, containing two letters, one of which provided instructions about how to hire a hit man to kill Jordan, Smith, and Watkins.

**B.      Procedural background**

Before trial, Augustin and Dais moved to dismiss the kidnapping-related counts in the Superseding Indictment.  Dais then moved to sever his trial.  The district court denied both motions.

After their convictions, Augustin and Dais moved for a judgment of acquittal, which the district court denied.  The court then sentenced Augustin to an aggregate term of 500 months of imprisonment, including a statutorily mandated term of 120 months' imprisonment because a firearm had been discharged during the kidnapping.  *See* 18 U.S.C. § 924(c).  Dais was sentenced to an aggregate term of 390 months of imprisonment, which included the same statutorily mandated term of 120 months' imprisonment under 18 U.S.C. § 924(c).  These timely appeals followed.

**II.  ANALYSIS**

**A.      Sufficiency of the evidence**

"In reviewing the sufficiency of the evidence, the relevant question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Warshak*, 631 F.3d 266, 308 (6th Cir. 2010) (en banc) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  "This is a very heavy burden" for a defendant to meet.  *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011) (internal quotation marks omitted).

Reversal of a conviction is warranted "only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence."  *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991).  In deciding whether a conviction is supported by substantial and competent evidence, we do not "weigh the evidence, assess the credibility of

witnesses, or substitute our judgment for that of the jury," *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2000) (internal quotation marks omitted), and we draw "all available inferences and resolve all issues of credibility in favor of the jury's verdict," *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001). "We review de novo the district court's denial of a motion for judgment of acquittal." *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010).

### 1. The kidnapping-related counts

Augustin and Dais first argue that the government failed to prove that they used a cellular telephone in the furtherance of a crime, which under their theory would require us to vacate Counts One and Two of the Superseding Indictment due to the lack of subject-matter jurisdiction. A kidnapping occurs under federal law when a defendant "unlawfully . . . carries away and holds for ransom . . . any person . . . when . . . the offender . . . uses the mail or any means, facility, or instrumentality of interstate . . . commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201. Because Jordan used his own cellular telephone when he called Watkins, Augustin and Dais argue that they could not, by definition, have themselves "used" an instrumentality of interstate commerce in violation of 18 U.S.C. § 1201.

The word "uses" is not defined in § 1201. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993) (holding that a defendant who traded a firearm for drugs "used" the firearm under 18 U.S.C. § 924(c) because the trade was in furtherance of a drug crime). The dictionary definition of "use" is to convert to one's service, to avail oneself of, or to carry out a purpose or action by means of. *Smith*, 508 U.S. at 229; *see also United States v. Miller*, 734 F.3d

530, 540 (6th Cir. 2013) (same). This definition of "use" must be "analyzed in light of the terms that surround it." *Smith*, 508 U.S. at 229.

Although Augustin and Dais did not "use" a cellular telephone in the traditional sense of personally placing calls, the government offered evidence that they employed a cellular telephone "in furtherance of the commission of the offense" by forcing Jordan to call his mother in an attempt to obtain a ransom. Augustin and Dais thus converted a cellular telephone to their purpose of obtaining payment for Jordan's release and "derived service" from a cellular telephone because it was instrumental in obtaining the ransom. *See id.* at 229 ("By attempting to trade his [firearm] for the drugs, he 'used' or 'employed' it as an item of barter to obtain cocaine; he 'derived service' from it because it was going to bring him the very drugs he sought.").

Our conclusion is bolstered by the Supreme Court's common-sense statement that there are multiple ways to "use" an object. *Id.* at 230 ("As the dictionary definitions and experience make clear, one can use a firearm in a number of ways."). Because the government offered evidence that Augustin and Dais used a cellular telephone in the commission of the kidnapping, we reject their arguments on this issue.

### 2. *Ransom demand*

Dais next argues that the government failed to establish that he personally demanded a ransom in the commission of the kidnapping. The federal kidnapping statute requires that the crime be undertaken "for ransom or reward." 18 U.S.C. § 1201(a). Under Dais's theory, he did not make any ransom demands and thus cannot be convicted under the statute.

Dais's argument misses the mark because he was convicted of aiding and abetting a kidnapping. Thus, even if Dais never personally demanded a ransom, the evidence established that Augustin did. This makes Dais as responsible as if he himself had made the demand. *See*

18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

The government's evidence establishes that Augustin, in exchange for Jordan's life, demanded $4,200, real cocaine, or the delivery of Hoss. Augustin's ransom demand is therefore imputed to Dais as if Dais had made the demand himself. *See id.* From this and other evidence, a rational juror could conclude that Dais aided and abetted the kidnapping in this case.

### 3.    *Murder for hire*

We now turn to the sufficiency of the evidence on Augustin's murder-for-hire conviction. The federal murder-for-hire statute provides that

> [w]hoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

18 U.S.C. § 1958(a).

Augustin argues that the government failed to establish a quid pro quo agreement between himself and the would-be hit man. According to Augustin, an "essential element of the crime of murder for hire is an agreement between the hiring party and the person hired that the latter will be compensated for his services." *Getsy v. Mitchell*, 456 F.3d 575, 591–92 (6th Cir. 2006) (internal quotation marks omitted). The government contends that this court declined to adopt a similar argument in *United States v. Ransbottom*, 914 F.2d 743, 746 (6th Cir. 1990).

In *Ransbottom*, the court rejected the argument that § 1958(a) requires "participation by at least two persons, i.e., the travel must be in furtherance of a completed agreement, based on consideration, that a contract murder be committed." *Id.* at 745. It reasoned that § 1958(a) permits a conviction if a defendant traveled "with the *intent* that a contract murder be committed. This requirement is plain and unambiguous." *Id.* at 746 (emphasis added). In addition, the court explained that "the statute gives no indication that the contract must be in existence and that the consideration must have been provided at the time of the travel." *Id.*

Here, Augustin sent a letter to Justine Van Orden, Dais's girlfriend, in which he described how to hire a contract killer to murder Jordan, Smith, and Watkins. Augustin promised to "pay double" for the murders. This use of the mail "plainly was for the purpose of facilitating the contract killing" of individuals who were capable of tying Augustin to the kidnapping. *See Ransbottom*, 914 F.2d at 746.

The cases relied on by Augustin do not compel a different conclusion. *Getsy*, 456 F.3d at 591–92, for example, addressed an Ohio murder-for-hire statute, not 18 U.S.C. § 1958, and therefore does not, as Augustin claims, "unambiguously adopt[] the position that murder for hire requires an agreement between the principal parties." (Augustin's Reply Br. at 5) *United States v. Acierno*, 579 F.3d 694 (6th Cir. 2009), another case cited by Augustin, addressed whether $100 that had been given to a would-be killer for fuel and expenses qualified as "anything of pecuniary value" under § 1958(b)(1). *See id.* at 700 (holding that the jury could conclude that the $100 "was some sort of misguided attempt at not creating the money trail [the defendant] feared") (internal quotation marks omitted). These cases do not stand for the proposition that § 1958(a) requires the existence of a contract in order to be convicted. Because a rational juror

could conclude that Augustin used the mail with the intent to commission three separate murders, we reject Augustin's arguments on this issue.

### 4. *Obstruction of justice and attempting to murder witnesses*

Augustin next argues that the lack of evidence tied to his murder-for-hire conviction means that he cannot be found guilty of attempting to murder witnesses (Counts 8–10) or of obstructing justice (Count 11). He makes this argument without citation to any legal authority or additional development in his briefs. Moreover, he impliedly acknowledges that these additional charges rise or fall on the validity of his murder-for-hire conviction.

In light of Augustin's convictions on these Counts being connected to the evidence related to his murder-for-hire conviction, we conclude that sufficient evidence supports his convictions on Counts 8 through 11. To the extent that Augustin challenges the substantive bases for his conviction on these counts, we conclude that he has waived appellate review. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted).

### B. Constitutionality of 18 U.S.C. § 1201(a)(1)

Augustin and Dais further argue that 18 U.S.C. § 1201(a)(1), as amended in 2006, is unconstitutional both facially and as applied to them. The amended version of § 1201(a)(1) criminalizes kidnappings when a defendant "uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in the furtherance of the commission of the offense . . . ." Augustin and Dais contend that allowing federal authorities to prosecute any kidnapping in which a defendant used "any means, facility, or instrumentality" to commit or further the offense violates the Commerce Clause.

We review challenges to the constitutionality of federal statutes de novo. *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012). Under the Commerce Clause, Congress may regulate (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) those activities that substantially affect interstate commerce. *United States v. Lopez,* 514 U.S. 549, 558–59 (1995). "Where Congress seeks to regulate the channels or instrumentalities of interstate commerce, it is not bound by the 'substantial effects' test and retains plenary power to regulate things and activity that cross state lines." *United States v. Al-Zubaidy*, 283 F.3d 804, 811 (6th Cir. 2002).

We first address Augustin's and Dais's as-applied challenges. *See Connection Distrib. Co. v. Holder*, 557 F.3d 321, 327 (6th Cir. 2009) (en banc) ("The 'usual judicial practice' is to address an as-applied challenge before a facial challenge because it generally will be more 'efficien[t].'") (alteration in original). They contend that this case falls under *Lopez*'s third prong because the interstate nexus—the use of a cellular telephone—is weak. Under their theory, § 1201(a)(1) is unconstitutional because the government's evidence established only intrastate use of a cellular telephone.

The caselaw of this circuit is to the contrary. Our caselaw unequivocally holds that "cellular telephones, even in the absence of evidence that they were used to make interstate calls, have been held to be instrumentalities of interstate commerce." *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999) (emphasis omitted); *see also United States v. Willoughby*, No. 12-3822, ___ F.3d ___, 2014 WL 321885, at *10 (6th Cir. Jan. 30, 2014) ("We also note that Congress's authority to regulate interstate commerce includes the authority to regulate the instrumentalities thereof. . . . Willoughby's cell phone is such an instrumentality.") (internal

citation omitted). Congress's authority to legislate is plenary when, as here, the government's evidence establishes that defendants used cellular telephones in the commission of a kidnapping. *See Al-Zubaidy*, 283 F.3d at 811. We therefore reject Augustin's and Dais's as-applied challenges.

Our rejection of Augustin's and Dais's as-applied challenges also disposes of their facial challenges. *See Connection Distrib. Co.*, 557 F.3d at 335 ("[I]t rarely (if ever) will be the case that a court, having upheld the constitutionality of a law in the context of the as-applied challenge before it, will proceed to strike the law in all of its applications based on hypothetical applications of the law to hypothetical individuals not before the court."). Because the evidence was sufficient to show that the defendants used a cellphone in furtherance of the kidnapping, their facial changes are without merit. *See Al-Zubaidy*, 283 F.3d at 811.

## C.    The denial of Dais's motion to sever

We now turn to the denial of Dais's motion to sever. Dais argues that the district court abused its discretion by jointly trying him and Augustin. He contends that the evidence tying Augustin to the attempted murders for hire unfairly implicated him. Although we ordinarily review the denial of a motion to sever under the abuse-of-discretion standard, the plain-error standard applies in this case because Dais failed to renew his motion to sever at the close of evidence. *See United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) ("Since Lopez failed to renew his motion to sever at the close of evidence, we can reverse only upon a showing of plain error.").

When reviewing the denial of a motion to sever, we are guided by the principle that "persons jointly indicted should be tried together because there is almost always common

evidence against the joined defendants that allows for the economy of a single trial." *Id.*

(internal quotation marks omitted). As this court has explained,

> [s]everance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. The fact that a defendant may have a better chance at acquittal if his trial were severed does not require the judge to grant his motion: the defendant must show substantial, undue, or compelling prejudice.

*Id.* (internal citation omitted) (internal quotation marks omitted).

Dais contends that the joint trial exposed the jury to letters in which Augustin attempted to solicit the murders of three witnesses, which Dais claims "creat[ed] in the minds of the jury an association between him and the murder scheme in which he had no role whatsoever." He further argues that the admission of the letters written by Augustin implicating Dais in the kidnapping violate the Confrontation Clause. Finally, Dais argues that Augustin's statements to a fellow inmate about cocaine distribution—charges on which both defendants were acquitted— were unduly prejudicial.

To the extent Dais claims that being tried jointly with Augustin increased his likelihood of guilt by association, "[t]his is precisely the type of generalized argument that cannot sustain a motion to sever, particularly when viewed through the deferential lens of plain-error review." *United States v. Nagi*, 541 F. App'x 556, 566 (6th Cir. 2013) (holding that a defendant's motion to sever was properly denied when he claimed to have been convicted because of "mere association" with his codefendants). The district court instructed the jury that Augustin and Dais were charged with separate crimes, emphasizing the need to "separately consider the evidence against each defendant on each charge, and to return a separate verdict for each one of them." We have no reason to believe that the jury failed to follow the court's instructions, so Dais's argument on this point is without merit. *See United States v. Walls*, 293 F.3d 959, 966

(6th Cir.2002) ("Juries are presumed to be capable of following instructions . . . regarding the sorting of evidence and the separate consideration of multiple defendants.").

Dais's argument based on the Confrontation Clause also fails because Augustin's statements were nontestimonial. The Supreme Court has held that "[a]n accused is deprived of his rights under the Confrontation Clause when the confession of a nontestifying codefendant that implicates the accused is introduced into evidence at their joint trial . . . even if the jury is instructed to consider the confession only as evidence against the codefendant." *United States v. Cope*, 312 F.3d 757, 780 (6th Cir. 2002) (citing *Bruton v. United States*, 391 U.S. 123, 137 (1968)). But "the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).

The letters in question were clearly nontestimonial because their intended purpose—to facilitate the hiring of a hit man to kill three witnesses—was inherently secretive and criminal in nature. Consequently, Augustin cannot reasonably claim that he "anticipate[d] [the statements] being used in a criminal proceeding" against him. *Id.* at 326. Dais's arguments to the contrary are therefore unpersuasive.

Finally, the district court did not plainly err by admitting statements made by Augustin to fellow inmate David Jones about Augustin's intent to distribute cocaine. Not only did the court give a proper limiting instruction regarding the statements, but Augustin and Dais were acquitted on the drug-trafficking counts. Dais has thus failed to demonstrate any substantial or undue prejudice resulting from the admission of Jones's testimony.

**D.      The district court's finding that Augustin discharged a firearm**

We next consider Augustin's argument that the district court violated his rights under *United States v. Alleyne*, 133 S. Ct. 2151 (2013), by finding that he discharged a firearm during

the kidnapping. *See id.* at 2155 ("Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."). The district court's finding subjected him to a 120-month statutory mandatory-minimum sentence. In response to Augustin's argument, the government concedes that the court erred by not submitting the issue of whether Augustin discharged his firearm to the jury, but contends that the error was harmless.

We address this issue under the plain-error standard because Augustin's objection in the district court was based on the accuracy of a specific factual finding, not based on the propriety of judicial fact-finding in general. Applying the plain-error standard, which is "akin to . . . harmless error analysis," our inquiry is "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Mack*, 729 F.3d 594, 607–08 (6th Cir. 2013) (internal quotation marks omitted).

In *Mack*, as in this case, the defendant argued that *Alleyne* required reversal because the district court made findings of fact that increased the statutory mandatory-minimum sentence. *Id.* at 606. This court rejected Mack's argument, reasoning that the "undisputed trial evidence convinces us that, if properly instructed, the jury would have found beyond a reasonable doubt . . . that the defendant brandished a firearm during the robberies." *Id.* at 609.

Similarly, the undisputed evidence here establishes that Augustin discharged a firearm during the kidnapping. Jordan testified that Augustin threatened him with a game of Russian roulette by aiming the gun at Jordan's head and pulling the trigger. Then, to prove that the gun functioned properly, Augustin discharged his weapon at a passing bird. Based on this undisputed evidence, "it is clear to us beyond a reasonable doubt that the outcome would not have been different even if the district court had instructed the jury on the element of [discharging a

firearm] and required the jury to make a finding on that element." *See Mack*, 729 F.3d at 608.

We therefore reject Augustin's *Alleyne*-based challenge.

**E.      Constructive amendment**

Dais next argues that the district court varied from, or constructively amended, the

indictment by instructing the jury that a defendant is guilty of kidnapping in violation of 18

U.S.C. § 1201 if he "used or caused to be used" a firearm in the commission of the crime.  He

points out that the phrase "or caused to be used" is found in neither the Superseding Indictment

nor the language of § 1201.  In making this argument, Dais identifies points at which the court

inconsistently instructed the jury about whether a cellular telephone was "used" as opposed to

"used or caused to be used."  "This court reviews de novo the determination as to whether there

has been an amendment to, or variance from, an indictment." *United States v. Solorio*, 337 F.3d

580, 589 (6th Cir. 2003) (internal quotation marks omitted).

In characterizing the difference between a constructive amendment and a variance, this

court has explained that "[a] *variance* . . . occurs when the charging terms [of the indictment] are

unchanged, but the evidence at trial proves facts materially different from those alleged in the

indictment.  In contrast, an *amendment* involves a change, whether literal or in effect, in the

terms of the indictment."  *Id.* (second alteration in original) (emphasis in original) (internal

quotation marks omitted).  A constructive amendment, furthermore, is per se prejudicial and

requires reversal, but a variance constitutes reversible error only if the "substantial rights of the

defendant have been affected." *Id.* at 590 (internal quotation marks omitted).

Before issuing its final instructions to the jury, the district court overruled Dais's

objection to the "caused to be used" language in the instructions on § 1201.  The court reasoned:

> With respect to the "caused to be used" language, 18 U.S.C. § 2 makes a person
> criminally liable if that person causes or aids and abets someone else in

committing a crime. Section 2 is not a separate offense; it is merely a means of attaching liability to someone for their acts. So even if the statute does not contain this language, then 18 U.S.C. § 2 would authorize its use in this connection. Under federal law, there is no distinction between the person that [sic] actually commits the crime and the person who causes the crime to be committed.

Under the federal aiding-and-abetting statute, "[w]hoever willfully *causes an act to be done* which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b) (emphasis added). This theory of liability is "embedded in federal indictments." *United States v. McGee*, 529 F.3d 691, 696 (6th Cir. 2008). The district court's instruction therefore did not constructively amend the Superseding Indictment because the instruction simply brought to the forefront what was already implied in the charging instrument. We therefore reject Dais's argument on this issue.

Nor are we persuaded by Dais's arguments related to the alleged variance. The Superseding Indictment charged Augustin and Dais with "us[ing] an instrumentality of interstate commerce" in Jordan's kidnapping. Embedded in this allegation is a theory of aiding-and-abetting liability. *See McGee*, 529 F.3d at 696. Because the government's evidence at trial reflected this theory of liability, there was no variance.

## F.    Sentencing

The final issues in this appeal relate to sentencing. Augustin argues that his sentence was substantively unreasonable because the district court allegedly failed to take into account Augustin's prior military service. Dais in turn contends that the court inadequately addressed his so-called "no-kidnapping" objection, which rests on Dais's disagreement with the jury's finding him guilty on the kidnapping charge.

We review sentences imposed by the district court for reasonableness. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Sentences within the applicable Guidelines range are afforded a presumption of reasonableness, whereas a sentence "outside the Guidelines carries with it no legal presumption." *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). We must "review every sentence that is free from significant procedural error under a deferential abuse-of-discretion standard, regardless of whether the sentence is within the Guidelines range or significantly outside it." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

Augustin claims that the district court failed to consider the full extent of his motion for a downward departure on the basis of his prior military service. But the court in actuality *sua sponte* addressed Augustin's military service and explained why Augustin did not deserve a downward departure on that basis. The court's denial of Augustin's motion reflects the principle that, although "[o]ur Nation has a long tradition of according leniency to veterans in recognition of their service," *Porter v. McCollum*, 558 U.S. 30, 43 (2009) (per curiam), awarding a downward departure based solely on military service is not automatic. *See* U.S.S.G. § 5H1.11 ("Military service *may* be relevant in determining whether a departure is warranted.") (emphasis added); *see also United States v. Theunick*, 651 F.3d 578, 592 (6th Cir. 2011) (affirming the denial of a defendant's request for a downward departure based on his prior military service).

Augustin next contends that the district court failed to consider all the relevant sentencing factors, rendering his sentence substantively unreasonable. As a threshold matter, Augustin's within-Guidelines sentence is presumptively reasonable. *See Vowell*, 516 F.3d at 509. Augustin does not claim that the court improperly calculated his applicable Guidelines range, so we concentrate our analysis on the court's consideration of the sentencing factors under 18 U.S.C. § 3553(a).

Although Augustin claims that the district court failed to consider all the relevant sentencing factors under § 3553(a), the court discussed the seriousness of the offense before explicitly articulating a need to protect the public from additional crimes that Augustin might commit. This shows that "the district court did not arbitrarily choose a sentence, but chose a sentence it considered sufficient but not greater than necessary to comply with the purposes of § 3553(a)." *See Vowell*, 516 F.3d at 512. "On abuse of discretion review, we will give 'due deference to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Id.* (alteration in original) (internal quotation marks omitted).

Finally, Dais argues that the district court failed to address his objection that the jury erred in convicting him of kidnapping. The court at sentencing referred to this as Dais's "no-kidnapping" objection. Rather than failing to address this objection, the court addressed it concurrently with Dais's related objection based on the government's alleged failure to establish a ransom for the kidnapping count. Thus, when the court explicitly rejected Dais's argument about there being no proof of a demand for ransom, it also rejected his no-kidnapping objection. Our conclusion is bolstered by Dais's attorney agreeing with the court, at the end of the hearing, that all of the objections on behalf of Dais had been resolved. We therefore reject Dais's argument on this basis and find that Dais's and Augustin's sentences were reasonable.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.